THE DELAWARE, LACKAWANNA AND WESTERN RAIL-
ROAD COMPANY, PLAINTIFF IN ERROR, v. MARY HEF-
FERAN, ADMINISTRATRIX, DEFENDANT IN ERROR.

There being no distracting danger and no obstruction to interfere with his view, the deceased was clearly guilty of contributory negligence in going on the track in front of an approaching locomotive, which he could have seen if he had looked before he stepped on the railroad tracks. The motion for a nonsuit should have been granted.

On error to the Supreme Court..

For the plaintiff in error, *Bedle, McGee & Bedle.*

For the defendant in error, *Collins & Corbin.*

The opinion of the court was delivered by

ABBETT, J.   On the evening of November 16th, 1892,. about a quarter past ten o'clock, the deceased was walking northerly, on the easterly sidewalk of Fourth street, in the town of Harrison, apparently going towards his home, in Hamilton street, where he had resided for over four years previously.   When he had nearly reached Essex street and was about on the northerly tracks of the main line of the Delaware, Lackawanna and Western railroad, he was struck by a locomotive of that road, which was drawing a passenger train on the westbound tracks, from Hoboken to Newark. It was running at the rate of about twenty-seven miles an hour.   He was instantly killed.   The only witness for plaintiff that saw him while he was near to and approaching the railroad tracks, and was thereon, and who saw him struck, was Mary Killan, who lived on the third floor of the house on the northeast corner of Fourth and Essex streets, a short distance north of the place where the deceased was killed. She was looking out of the window, waiting for her husband. It was a cloudy, dark night.   It was not raining, but there were no moon or stars visible.   When she first saw him he was walking along the easterly sidewalk of Fourth street, coming northerly, towards her house, and when he was struck he had his foot on the railroad tracks nearest her, and then she saw that he wanted to get back, but he could not, as the train struck him before he could retreat.   She could not see who it was, and thought it might be her husband.   Gates had been constructed at this crossing for a year or more before the accident, but they had never been used up to that time, and there never had been any flagman stationed there. Deceased was familiar with this locality and its dangers, as

he had worked at Illingworth's steel works, at the foot of
Fifth street, nine to ten months before the accident, and lived
in Hamilton street. In going to and returning from his
work he passed this place and the other points of danger, or
near thereto and within sight thereof, twice a day. He used
either Fourth street or Third street or Fifth street, to reach
the steel works or his home. He had to cross daily the new
main lines of the Delaware, Lackawanna and Western rail-
road, and also the old line of that road, which was not then
in use. He also crossed daily both lines of the Pennsylvania
railroad which run into Newark. The deceased, in approach-
ing the place of the accident, when he reached the old tracks
of the Delaware, Lackawanna and Western road, could see
a quarter of a mile, looking in the direction of any coming
westbound train. He then had seventy to eighty feet to
walk to the main tracks of said road, and when he reached
these tracks, if he had looked he could have seen a west-
bound coming train one thousand two hundred and ninety
feet distant and an eastbound train as far west as the station,
a distance of about one thousand eight hundred feet. During
the time a locomotive was covering these distances it would
be in sight all the time, if deceased had looked. The dis-
tance across the main tracks of the Delaware, Lackawanna
and Western, between the outer rails, was eleven feet eight
and one-half inches. It was in crossing this space that he
was struck and killed. If he had looked before he had
attempted to cross this space, the locomotive that struck him
would have been in his sight all the time for one thousand
two hundred and ninety feet. If he had kept off or gotten
off the tracks he would have been safe. There was no
obstruction or anything in the way to prevent deceased seeing
the approaching train in time to avoid the danger. He had
nearly crossed this eleven feet eight and one-half inches space,
and had his foot on the northerly tracks of the main line of
the Delaware and Lackawanna road, before he heard or saw
the coming locomotive, which was then almost on him. It
was not until then that he seems to have looked for or had

any apprehension of danger, as until that moment he had been walking straight ahead, up to and across the Delaware, Lackawanna and Western main tracks. Then, with his foot on these tracks, he tried to get out of his dangerous position, but he was too late; he was almost instantly struck by the locomotive. The deceased, in his lifetime, could see and hear, and there was nothing that occurred or existed in any of the surrounding circumstances, to prevent his seeing the locomotive if he had looked before he began to cross this dangerous space of eleven feet eight and one-half inches. The brother of deceased, John Hefferan, after stating that it was a dark, cloudy night, stated that you could see the headlight of a locomotive as far as Sixth street; that is over one thousand feet. Patrick Connelly testified that you could not tell whether a coming locomotive on the westbound track was on the Pennsylvania tracks or the Delaware and Lackawanna tracks, until it reached Fifth street; this is over five hundred feet distant from the place where deceased was struck. There is no evidence that deceased looked at all, and if he had done so, and saw an approaching train, and was uncertain whether it was on the Pennsylvania or the Delaware, Lackawanna and Western tracks, as a prudent man, he should have stopped and ascertained, before crossing the tracks, on which it might be coming.

It was clear, at the close of plaintiff's case, that deceased did not look for an approaching train before going on the tracks to cross them. At the rate the train was running, it would have taken the train about twenty-five seconds to run the one thousand feet from Sixth street to the place of the accident. It would have been clearly imprudent for deceased to have attempted to cross the tracks in front of such a train, if he had looked. It would seem to be that, hearing no whistle or bell and no sound of an approaching train, deceased looked neither to the right nor the left, and, using no precaution whatever, walked straight ahead up Fourth street and over these tracks, and never did anything until the train was

within a few feet of him, when it was too late for him to do anything to save himself.

This was the condition of the case at the end of plaintiff's case, and there was no evidence thereafter that helped it in any way.

The defendant asked for and the trial judge refused to grant a nonsuit, and an exception was allowed to this ruling.

"The plaintiff had a right to cross the railroad at that place, if, in so doing, he exercised care to avoid collision with trains of the company. By law, the plaintiff was charged with the duty of looking and listening before he attempted to cross." *Berry* v. *Pennsylvania Railroad Co.*, 19 *Vroom* 141.

"A railroad track is a place of danger, and anyone who incautiously places himself upon it, and sustains damage in consequence of such carelessness, is entirely remediless. The law requires of all persons approaching such a point of peril the exercise of a reasonable caution, and if this duty is neglected and an accident thereby occurs, it says to those who are thus in default that they must bear the ill which is the product, in whole or in part, of their own folly." *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Vroom* 531.

There was in this case no distracting danger from any other source, as in the case of *Connelly* v. *Trenton Passenger Railway Co.*, 27 *Vroom* 700. This is not a case where an examination of the evidence showed sufficient for "fair debate" as to the conclusion in relation to the question of contributory negligence of deceased, as in the case of *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton*, 26 *Id.* 342.

The deceased was not relieved of the duty of exercising the highest practicable degree of care in avoiding the danger to himself, and of looking each way for an approaching train, before crossing, because of the neglect of the defendant in failing to give proper statutory signals by ringing the bell or blowing the whistle on the locomotive. It was so held in *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180, where this court reversed a judgment for plaintiff, on the ground

that he should have been nonsuited on account of the contributory negligence of the driver of his carriage.   A nonsuit below was also upheld in this court, in *Merkle* v. *New York, Lake Erie and Western Railroad Co.*, 20 *Vroom* 473, on the ground that plaintiff's driver, not being able to see an approaching train at any considerable distance, and having a wagon filled with bottles, which, when driven, rattled and made a noise, did not exercise ordinary prudence by stopping his wagon, so as to stop the noise, and listening when he was near enough to see whether there was danger or not.

Where it clearly appears, as it does in this case, on the plaintiff's own showing, that the deceased contributed, by his own carelessness, to the accident which caused his death, it was the duty of the trial judge to have nonsuited the plaintiff, and error lies for the refusal so to do.   *New Jersey Express Co.* v. *Nichols*, 4 *Vroom* 434; *Delaware, Lackawanna and Western Railroad Co.* v. *Toffey*, 9 *Id.* 525.

The judgment should be reversed and a new trial ordered.

*For affirmance*—None.

*For reversal* — The Chancellor, Chief Justice, Abbett, Depue, Dixon, Garrison, Magie, Reed, Van Syckel, Bogert, Brown, Krueger, Sims.   13.