THE PENNSYLVANIA RAILROAD COMPANY v. BARBARA PFUELB, ADMINISTRATRIX OF JOHN PFUELB, DECEASED.

1. John Pfuelb, in attempting to cross the railroad track of the plaintiff in error on foot, walked over the eastbound track immediately after a train had passed him on that track, and was struck and killed by a train moving in the opposite direction on the westbound track. He had a clear view of the track in the direction from which the eastbound train came for three-quarters of a mile and no danger to him was apparent on that track. It was his duty to look and listen before

he reached the westbound track; if he had done so, he could not have failed to see the coming train. The fact that he walked on the westbound track in front of the train is conclusive evidence that he did not look. He was, therefore, chargeable with contributory negligence, and a verdict should have been directed for the defendant.

2. The fact that the flagman at the gates had neglected to let them down, before the decedent walked to the eastbound track, did not absolve the decedent from the duty of looking and listening before he went upon the westbound track; it was notice to him that he could not rely upon the care of the flagman, and should have warned him at least not to abate his care for his safety.

In error.

Argued at February Term, 1897, before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff in error, *Vredenburgh & Garretson.*

For the defendant, *Samuel Kalisch.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is a suit against the Pennsylvania Railroad Company and the Lehigh Valley Railroad Company to recover damages for causing the death of plaintiff's intestate at the railroad crossing at East Kinney street, in the city of Newark, by a passenger train of the Lehigh Valley road running from New York westward on the tracks of the Pennsylvania road.

There were gates at the crossing operated by a gateman in the employ of the last-named company. The jury found in favor of the Lehigh Valley company, and must, therefore, have concluded that the statutory signals were given by that company.

The writ of error is prosecuted to review the judgment against the Pennsylvania company.

Two of the plaintiff's witnesses testified that when they reached the gates at the crossing they saw a train approaching from the direction of Elizabeth on the eastbound track, and

they waited until it had passed over the crossing. The gates were then up, and the deceased was on foot five or six steps behind them.

These witnesses then passed over the eastbound track in safety, and also over the westbound track.

The intestate followed them; he passed over the eastbound track, and was struck and killed on the westbound track by the train from New York.

There was also evidence from which the jury could have found that the decedent, on account of obstruction of the view by the eastbound train, could not see the train on the westbound track until he reached the furthest rail of the eastbound track.

This was the case as presented by the testimony of the plaintiff, and thereupon the counsel for the plaintiff in error moved to nonsuit the plaintiff below.

The trial judge properly ruled that the existence of the gates did not absolve the traveler from stopping, looking and listening before he stepped upon the tracks, but he declined to grant the motion, because there was no evidence in the case to show that the decedent did not stop, look and listen, and there was no proof of such circumstances and such a situation at the time of the accident as would make it obvious that the decedent must have failed to look and listen.

The case being then bare of proof either way upon that subject, negligence of the decedent could not be presumed, and there was, therefore, no error in refusing to nonsuit.

After the refusal of this motion, the defendant on the trial introduced testimony to show that by actual measurement upon the ground, a person standing at the southeast gate, where decedent entered, could see the tracks towards New York for a distance of twenty-two hundred and eighty-five feet, and in the opposite direction for a distance of forty-five hundred and thirty-seven feet.

The eastbound track is four feet eight and a half inches wide, and is distant seven feet from the westbound track.

This testimony was not challenged, or in any respect con-

JUNE TERM, 1897. 281

*31 Vroom.*        Penna. R. R. Co. v. Pfuelb.

troverted, except as to how far the view would be obstructed by a train passing on the eastbound track.

Thereupon, the court was requested to direct a verdict for the Pennsylvania company, because the decedent was guilty of contributory negligence, and error is assigned upon the refusal so to do.

The decedent was upon foot ; he could see to the southwest along the tracks for over three-quarters of a mile, and no danger was apparent from that direction.

When he reached the northerly rail of the eastbound track, he was in no danger whatever, and in no situation of peril to interfere with the exercise of a calm judgment. If he had stopped there for an instant and looked to the northeast, he could not have failed to see the train which struck him. If he had looked—he was in a place of safety—and would not have walked into a position where death was almost certain.

That he did put himself in front of the train is incontestable evidence that he did not look. *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180.

The exercise of reasonable prudence on the part of the decedent would have protected him from injury. It was his duty to look before he passed upon the westbound track, and his obvious failure to do so was negligence on his part which contributed to the fatality. *Delaware, Lackawanna and Western Railroad Co.* v. *Hefferan*, 28 *Vroom* 149.

On the part of the plaintiff below it is urged that the gates were up, and the eastbound train obstructed the view of the train from New York.

These circumstances, in my judgment, should have operated as a warning to the decedent, and made his duty the more imperative to be on his guard against danger. He saw the train passing while the gates were up, and knew, therefore, that the gateman had neglected his duty, and that he could not rely with confidence upon the fact that the gates were up, and if he could not see a train coming from New York; by reason of the eastbound train obstructing the line of

282 NEW JERSEY SUPREME COURT.

Penna. R. R. Co. v. Pfuelb.        *60 N. J. L.*

vision, he was clearly guilty of negligence in not waiting a few moments until the obstruction was removed.

This was the view taken by this court in *West Jersey Railroad Co.* v. *Ewan*, 26 *Vroom* 574, the circumstances there not differing substantially from those presented by the case under review.

In the Ewan case, Mr. Justice Dixon, who delivered the opinion of the court, says:

"As the plaintiff reached the nearest track, a freight train was going towards his left on the track furthest from him; that this train made a ' tremendous noise,' as the plaintiff described it, and emitted smoke which settled down upon the tracks; that the plaintiff stood upon the nearest track, which he knew to be not in use, until the freight train passed the street crossing, and then, knowing that the middle track was used for trains coming from his left, he looked towards the left, and seeing nothing but smoke upon the tracks, and hearing no whistle or bell, he proceeded to walk across at his usual gait, and was struck by a train coming from the left on the middle track.

" From these circumstances it is apparent that the plaintiff, without any reason for haste, went upon the track when it was evident to him that he could neither see nor hear any train which he was aware might be approaching, and when the causes of his inability to see and hear were so fleeting that in a few seconds they would have gone. It seems indisputable that such conduct was negligent. In the exercise of reasonable prudence, a man could not expose his life to a peril which he knew might be imminent, if a delay of a few moments would assure him of safety, unless impelled by some motive of extreme urgency."

This reasoning is pertinent with equal force to the case before us, and, in our judgment, there was error in the refusal of the trial court to direct a verdict for the plaintiff in error, and therefore there must be a reversal.