GEORGE E. CONKLING, DEFENDANT IN ERROR, v. ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 14, 1899—Decided June 19, 1899.

1. The duty of a traveler upon a highway to look and listen before crossing a steam railway requires, especially where physical conditions interfere with the free use of vision or hearing, that he should exercise care to select a position from which an effective observation can

be made and to use the necessary means within his control, to render the act of looking and listening reasonably effective.

2. A plaintiff who was driving a covered ice wagon over such a crossing was injured by an express train at midday, going thirty-five or forty miles an hour, colliding with his wagon. He drove a team of gentle horses, under easy control, on a jog trot over a macadamized road, making some noise as he traveled. To the south his view of the railway was unobstructed, but to the north, whence the train came, his view was obstructed by a building and some trees until he reached a point sixty feet west of the track. He then had a clear view, if he had looked, of thirteen hundred feet along the track to the north. His testimony was that he did not hear the usual signals; that he did look both ways before crossing, but not until his horses' feet were within six feet of the track, and that he did not see the train; that he did not at any time check the speed of his horses, but let them have their way, and that they continued on a trot until the collision occurred. Upon proof of these facts, which were undisputed—*Held,* that a denial· of a motion to nonsuit for contributory negligence was error. *Held, further,* that this result was not altered by the fact appearing from the plaintiff's testimony that an automatic gong,· erected by the company as an additional warning to travelers, by reason of some neglect, did not ring as usual when the train approached, whereby it was claimed the plaintiff was misled, the case coming within the rule that a failure of a railway company to provide or give a statutory signal will not relieve the traveler from his duty to look and listen for approaching trains if he has an opportunity, in order to avoid danger.

On error to the Supreme Court. The facts appear fully in the opinion.

For the plaintiff in error, *Corbin & Corbin.*

For the defendant in error, *Francis Scott.*

The opinion of the court was delivered by

HENDRICKSON, J. The controversy in this case arises ·over the denial of a motion to nonsuit the plaintiff on the ground of contributory negligence. The suit was for injuries to his person and property by a collision of the defendant's railway train with the plaintiff's ice wagon, which he was engaged in driving over the Crooks avenue crossing in the suburbs of Paterson.

The train was the midday express. It had left the station at Paterson and was on its way to Jersey City, and was traveling at the speed of from thirty-five to forty miles an hour.

The direction of the railway at this point is nearly north and south, and is crossed by Crooks avenue at right angles or nearly so in an easterly direction. The physical conditions of the approach to the crossing from the west, whence the plaintiff was driving, were these: Crooks avenue has a width of ninety feet, and near the railway is skirted on the north side with a building and with a row of trees reaching to the west side of Railroad avenue, which runs parallel with, and along the railway from Crooks avenue northward; the width of Railroad avenue is seventy feet, and the distance from the west side of that avenue to the railroad track is one hundred feet.

The view at this point from Crooks avenue to the south along the railroad was clear and unobstructed, but on the north a row of trees in full foliage, skirting the west side of Railroad avenue, obstructed the view from a wagon passing eastwardly along Crooks avenue until it reached a point sixty or seventy feet from the nearest rail. At a point sixty feet from the track the view was unobstructed for a distance of thirteen hundred feet northward along the track, and the distance of the view increased as the traveler approached the crossing until at a distance of fifteen feet from the track the view was for half a mile or over.

The conditions affecting the plaintiff with relation to the collision which occurred were these: He was at the time a man thirty-one years of age, in good health, with normal powers of sight and hearing; he had become familiar with the crossing through ten years' of constant travel over it.

The duty which devolves upon a person using the highway when about to cross the line of a steam railway under circumstances like these has been clearly defined and laid down by the courts of this state.

It is in brief that he must recognize the superior right of the steam cars to the right of way, because of their mode of

travel and the great speed with which they are permitted and expected to propel their trains in order to answer the necessities of the public traffic.

In order to subserve this right and at the same time protect the lives of travelers upon the railway, as well as the persons using the highways, the law requires that the traveler upon such a highway, before he attempts to cross the railroad, shall take the care and precaution which ordinarily prudent men, knowing their rights and duties in that particular, would take before exposing themselves to such dangers.

But what is the true standard of such care and precaution as applied to the acts and conduct of persons about to enter upon a railroad crossing? This court has given answer to this question in *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180, in these words: "A primary rule of legal caution is that a person about to cross a railroad is bound to use his eyes and ears to watch for signboards and signals, to listen for bell or whistle, and to guard against the approach of a train by looking each way before crossing." See, also, 3 *Ell. Rail.* 1166.

The rule as thus defined has since been approved and followed in this state, and is in accord with the great weight of authority elsewhere.

And it is equally well settled that if a plaintiff has failed in this duty, and his negligent act has proximately contributed in any degree to the occurrence that has caused his injury, he cannot recover, no matter if it appear that the defendant was also negligent. *Pennsylvania Railroad Co.* v. *Matthews*, 7 *Vroom* 531.

When this act of contributory negligence clearly appears in the plaintiff's testimony, it becomes the duty of the court to direct a nonsuit. *Pennsylvania Railroad Co.* v. *Righter*, supra; *Merkle* v. *New York, &c., Railway Co.*, 20 *Vroom* 473; *Pennsylvania Railroad Co.* v. *Leary*, 27 *Id.* 705; 3 *Ell. Rail.* 1163, 1179.

Did the plaintiff by his neglect of duty in this case, thus contribute to the accident that caused his injury? And does

this fact so clearly appear as to have made it the duty of the trial judge to grant the motion to nonsuit?

It must be said that there were conditions existing within the control of the plaintiff that accentuate the duty that should have required him, in this case, to look and listen with care before crossing.

He was driving an ice wagon, with scales, ice tongs and other utensils within, along a macadamized roadway, with his horses on a jog trot, causing considerable noise, which might interfere with his hearing the usual signals. His wagon was a covered one, with curtains down, and a slanting hood over the front, with a glass in the curtains on either side. Under such circumstances the duty of the traveler on the highway does not stop with looking and listening, but he must exercise care to select a position from which an effective observation can be made, and he must also exercise care to make the act of looking and listening reasonably effective. *Merkle* v. *Railroad Co., supra; Railroad Co.* v. *Ewan*, 26 *Vroom* 574; *Railroad Co.* v. *Block, Id.* 605; *Central Railroad Co.* v. *Smalley*, 32 *Id.* 277, 279; 3 *Ell. Rail.* 1166.

The plaintiff testified that when he got to the Erie railroad, he looked up the track and saw nothing only Mr. Kinne's son standing by the depot, and added, "I did not hear anything or any bell, and I did not see anything, and just as I got on the track the locomotive came right down on me."

He further testified on cross-examination that after he had passed the trees he did look up the track and look down again, and that it was as he was bringing his eyes away from looking up the track, that he saw Kinne. In this connection he also testified:

"*Q.* Where were the horses then?

"*A.* When I looked, just about going on the rails.

"*Q.* When you were looking?

"*A.* They were about six feet from the rails; the reins were tied up behind and I had them in my hand."

The following also appears in the plaintiff's testimony:

"*Q.* You trotted right down across the avenue on to the tracks, when you were hit?

"*A.* Yes, sir.

"*Q.* You did not interfere with them one way or the other?

"*A.* No, sir; just held them.

"*Q.* You could have stopped them if you desired?

"*A.* Yes, sir.

"*Q.* And you could have hastened them if you desired?

"*A.* Yes, sir.

"*Q.* When they were on this Erie track?

"*A.* Yes, sir.

"*Q.* How is it possible, that being so, you did not see this train?

"*A.* I did not have any alarm.

"*Q.* You were trusting to the alarm?

"*A.* Yes, sir.

"*Q.* You did not hear it sound?

"*A.* No, sir.

"*Q.* And as you did not hear it sound you thought it was all right?

"*A.* Yes, sir."

By blending together these excerpts from the testimony, it is not difficult to conclude that if the plaintiff looked up the track at all he did not look with reasonable care, and did not extend his vision far in that direction. Since the depot where Kinne stood was on the east side of the track and was only one hundred and seventy-four feet north of Crooks avenue, the seeing of Kinne does not necessarily indicate much length of vision up the track.

It must be observed, too, that the plaintiff did not halt his horses at all, so as to increase his opportunity for hearing such noises or signals as might indicate the approaching of a train.

Now, taking the testimony of the plaintiff most favorably to himself, and viewing it in connection with his acts and the circumstances thus developed, the conclusion is forced upon us, and it is entirely clear, that the plaintiff, if he looked at

all, did not look until looking was useless, or looking, did not heed what he saw. This was negligence in the plaintiff, which approximately contributed to the collision which caused his injury. Such was also the ruling in *Pennsylvania Railroad Co.* v. *Righter, supra*, under circumstances quite similar to those of the present case. In that case, a driver with a gentle team drove on a jog trot upon the tracks and was struck, and it appeared that when he reached the caution post, thirty feet from the point of collision, the track was visible for a mile (although there were obstructions before he reached that point).

Mr. Justice Reed in delivering the opinion of the court, speaking of the driver, said : " I am unable to see any reason why, if he had used his eyes with any degree of care, he could not have seen the approaching train in time to arrest the progress of his carriage and avoid the collision. It was his duty to approach the track with caution, and to have his horses at such a gait and under such control as would allow him to arrest their movements at once. Deany himself [referring to the driver] does not say that he looked at that point. There is, however, the testimony of three witnesses who say that they saw him look. But such testimony cannot aid the plaintiff, where it is clear that, if he had looked with care, he must have seen the train. If a traveler, says Dr. Wharton, by looking along the road could have seen an approaching train in time to escape, it would be presumed, in case of collision, that he did not look, or, looking, did not heed what he saw." The result was that the refusal to nonsuit was held to be erroneous and the judgment below was reversed.

This doctrine was approved in the recent case of *Pennsylvania Railroad Co.* v. *Pfuelb,* 31 *Vroom* 278, which was affirmed by this court.

In *Elliott on Railroads* the learned authors sum up the doctrine as drawn from the various cases from many jurisdictions in these words : " If the traveler could have seen the train by looking, the presumption is that he did not look, or,

if he did look, did not heed what he saw." 3 *Ell. Rail.* 1165.

It is insisted that this case is distinguished from those here cited, and that the company cannot defend upon the ground of contributory negligence, because, as plaintiff alleges, its gong, which acted automatically, was out of order and did not ring as usual on the approach of this train; that the plaintiff was thereby misled, and that if he relaxed his usual vigilance it should not be counted against him.

That such was regarded as a material point in the plaintiff's case is evinced by the fact that it is specially alleged in the declaration. But such a condition, if it existed, cannot justify in any degree the neglect of the plaintiff to exercise the required caution in approaching the crossing.

In the case of *Pennsylvania Railroad Co.* v. *Righter, supra,* after stating this rule of caution, the opinion proceeds: "Nor will the fact that the company has failed to provide or give a statutory signal relieve the person from making this observation, if he has an opportunity, by a view of the road to avoid danger." This statement of the law was approved by this court in *Delaware, Lackawanna and Western Railroad Co.* v. *Hefferan,* 28 *Vroom* 149. Other authorities in support of this doctrine are *Runyon* v. *Central Railroad Co.,* 1 *Dutcher* 556; *Gorton* v. *Erie Railroad Co.,* 45 *N. Y.* 660; *McCall* v. *New York Central Railroad Co.,* 54 *Id.* 642; 4 *Am. & Eng. Encycl. L.* 74; 3 *Ell. Rail.* 1171.

The cases cited by counsel in support of the opposite view I find do not favor his contention. In *Berry* v. *Pennsylvania Railroad Co.,* 19 *Vroom* 141, although under the particular circumstances of the case it was held that the absence of a flagman at his usual post of duty, giving signals of danger at a crossing, was a factor to be considered on the question of the traveler's contributory negligence, still it was also held that "negligence of a flagman will not excuse the traveler who attempts to cross the track of a railroad from looking both ways and listening. He must not rely entirely on the flagman."

It is claimed that by looking into the whole case the position of the plaintiff will be found more favorable to himself than that made by his own testimony. But I do not find it so. I find on the contrary that it thereby appears even more clearly, if possible, that the plaintiff failed to exercise ordinary care in his approach to the crossing.

It is unnecessary to consider the other exceptions, but it is proper to say that I find no error in the rulings of the learned judge who presided at the trial, except in the one particular already discussed in that he failed to regard the contributory negligence of the plaintiff as so clearly made out that it became a judicial question rather than one of fact to be submitted to a jury.

The judgment below should be reversed and a writ of *venire de novo* issued.

*For affirmance*—None.

*For reversal* — The Chancellor, Chief Justice, Collins, Garrison, Gummere, Lippincott, Van Syckel, Adams, Bogert, Hendrickson, Nixon, Vredenburgh. 12.