## HERMAN DIELE v. ERIE RAILROAD COMPANY.

Argued June 3, 1903—Decided November 9, 1903.

The plaintiff's servant was about to cross five railroad tracks, the two furthest of which were tracks of the defendant; the three nearest, tracks of another railroad corporation. He stopped, looked and listened before crossing the track nearest to him, but this observation was made at a point where his view was obstructed by a factory and a car standing upon a switch. He had an unobstructed view of seven hundred feet along the track in the direction from which the locomotive came when he was at a point thirty feet from the track, which point was between the first and second tracks as he approached. The evidence does not show that there was any other locomotive or train to distract his attention. He testified that he could not see the approaching locomotive, and gave as a reason the obstruction of his view by the factory and car. *Held*, that the trial judge should have granted a nonsuit.

On appeal from the Hoboken District Court.

Before Justices GARRISON, GARRETSON and SWAYZE.

For the plaintiff and respondent, *James F. Minturn.*

For the defendant and appellant, *George S. Hobart* (*Corbin & Corbin*, on his brief).

The opinion of the court was delivered by

SWAYZE, J.    The only question of law involved in this case is whether the court should have directed a nonsuit.

The action was brought to recover for injuries to a horse and wagon of the plaintiff, which were injured by a collision with a locomotive engine of the defendant company at a point in Hoboken, where Ravine road crosses the railroad tracks.  At this point there are five tracks—two of the West Shore railroad, two of the Weehawken branch of the Erie railroad and one a switch of the West Shore railroad.  The

plaintiff's horse was driven at the time by one Brethauer. The first track reached by Brethauer was the switch, then followed the two West Shore tracks and then the track of the Erie company, on which the accident occurred. At the time of the accident, the view of the plaintiff, in the direction from which the locomotive came, was obstructed by a freight car. The distance between the switch and the track upon which the plaintiff was struck was more than thirty feet. It is not claimed that the attention of Brethauer was distracted by locomotives or cars upon any of the tracks except as above stated. Brethauer was in a covered wagon. He testified that when he came to the railroad track he stopped, went off the wagon, looked up and down, went on the wagon again, drove down slowly, and drove slowly on, and that when he came on the second track he at once saw the engine; his horse took a jump, and after that he knew nothing about it. In response to a question by the court, he testified that when he got beyond the car which was standing on the switch he looked to see whether the car was coming from Weehawken, the direction from which the engine which struck him came; that when he was on the track he looked for the locomotive; "she was there already; she was on top of me;" and that when he first saw the locomotive it was about five feet away. He said that he didn't know how far he went after he stopped to look before the engine struck him, and that he didn't know how many tracks he crossed after he stopped, and that at the place where he stopped to look the factory and the car cut off his view. The surveyor who was called as a witness for the defendant testified that a few days before the trial he made measurements and tests to ascertain how far the engine could be seen at different points—fifteen, twenty-five, thirty-five and fifty feet, in the centre of the traveled road, from the south or far rail of the track on which the collision occurred. At thirty-five feet, which, according to the map which was offered in evidence, was a point between the switch and the first track of the West Shore railroad, there was an unobstructed view for seven hundred feet; at twenty-five

feet, which was a point between the two tracks of the West Shore railroad, there was a clear view of two thousand one hundred and forty-two feet. The testimony was uncontradicted that the situation on the day these observations were taken was the same as on the day of the accident, except for the absence of the freight car upon the switch, and the testimony makes it clear that the car could not have obstructed the view either at twenty-five feet or at thirty-five feet.

The negligence alleged is the failure to give the statutory signals. There was conflicting evidence on this subject, but we think that it was a question for the jury whether the signals were given or not, and the verdict ought not to be disturbed on this ground.

Brethauer, the driver of the wagon, was at the time in the employ of the plaintiff, and if the negligence of Brethauer contributed to the injury of the horse and wagon in such a way that but for his negligence the collision would not have happened, the plaintiff cannot recover. Upon well-recognized principles, he is held responsible for his servant's negligence.

The testimony of Brethauer is that he stopped at a point where the factory and the car upon the switch cut off his view. He does not say that he looked at any other point until the engine was about five feet away. It is true that he testified that he could not see the locomotive before it struck him, but he gives as a reason for this that his view was obstructed by the cooperage factory and the empty car. It is clear, however, from the testimony, that if he had looked he must have seen the approaching locomotive while he was still in a place of safety. In this respect the case is similar to *Conkling* v. *Erie Railroad Co.*, 34 *Vroom* 338; *Swanson* v. *Central Railroad Co., Id.* 605; *Cantrell* v. *Erie Railroad Co.*, 35 *Id.* 277. The plaintiff, on his own showing, stopped to make his observation at a point where it could not be effective by reason of the existing obstructions. He traversed the intervening space between that point and a point just before the point of collision without continuing his

observations, as far as the testimony shows, and the testimony as to the actual situation shows that he could not have been observing with any attention.

The only feature that distinguishes this case from cases heretofore decided in this state is the existence of several railroad tracks between the point where Brethauer stopped to make his observations and the point of collision, and a case might arise in which trains running upon the other tracks might so distract attention that it would be a question for the jury whether it was negligent for the driver of the wagon to proceed. In this case there is no evidence that there were any other trains upon the other tracks, nor does Brethauer say that his attention was distracted in any way.

The judgment should be reversed, with costs, and there should be a judgment of nonsuit.