DONATO GRASSO, BY HIS NEXT FRIEND. CARMEN GRASSO, Sr., CARMEN GRASSO, Sr., IN HIS OWN RIGHT AND CARMEN GRASSO, Jr., PLAINTIFFS, v. PENNSYL- VANIA-READING SEASHORE LINES, DEFENDANT.

Decided May 18, 1945.

For the plaintiffs, *Leon Leonard.*

For the defendant, *Lloyd, Horn & Perskie* (by *John Lloyd*).

BURLING, C. C. J. These causes of action sound in tort and the gravamen of the complaint is actionable negligence and the specific grievance complained of is the violation of the statute of this state (*R. S.* 48:12–57; *N. J. S. A.* 48:12–57), with respect to sounding of a whistle, or a ringing of a bell by a locomotive, in approaching a grade crossing of a highway. They were tried at the Atlantic County Circuit with a jury and verdicts were rendered in favor of the plaintiffs and against the defendant as follows:

(a) In favor of the plaintiff Donato Grasso by his next friend Carmen Grasso, Sr., for fifteen thousand dollars ($15,000).

(b) In favor of the plaintiff Carmen Grasso, Sr., in his own right for five thousand dollars ($5,000).

(c) In favor of the plaintiff Carmen Grasso, Jr., for seven hundred dollars ($700).

Within due season an application was made by the defendant and a rule was granted with exceptions reserved to show cause why the verdicts should not be set aside and new trials granted upon the grounds that:

1. Said verdicts were contrary to the weight of the evidence.

2. Said verdicts were contrary to the evidence.

3. Said verdicts were so excessive as to exhibit passion, prejudice, sympathy, partiality or mistake on the part of the jury.

A single reason is now relied upon by the defendant in support of its application, as set forth in its brief as follows:

"That the verdict was contrary to the evidence and to the weight of the evidence on the issue of contributory negligence. The reasons being so limited it is understood that the verdict returned in favor of the plaintiff, Carmen Grasso, Jr., is not in issue on this application, since there was admittedly no evidence to make that plaintiff subject to the defense of contributory negligence. It is not to be assumed, however, that the defendant concedes that its agents were negligent. The defendant concedes only, for the purpose of the argument of this rule, that there was question for the jury on the issue of 'primary' negligence under the applicable judicial decisions of the courts of this state."

The third reason, namely, excessiveness of the verdicts was not argued and is therefore deemed to be abandoned.

The only verdicts that are in issue, therefore, are the verdicts rendered in favor of the plaintiff Donato Grasso, by his next friend, Carmen Grasso, Sr., and in favor of Carmen Grasso, Sr., in his own right.

The plaintiff Donato Grasso, a minor, seventeen years and five months of age, at the time of the event, was the operator without the permission and upon no mission of the plaintiff Carmen Grasso, Jr., the owner of a Chevrolet stakebody truck. The truck was involved in a collision with the defendant's locomotive with resulting personal injuries to Donato Grasso. The plaintiff Carmen Grasso, Sr., was Donato's father and sued for alleged consequential damages. The collision occurred on the 1st day of March, 1942, in midafternoon, at a grade crossing unprotected, except by a warning sign as is required by R. S. 48:12–58; N. J. S. A. 48:12–58, of the right of way of the defendant with a dirt and unimproved street known as Fifteenth Street, leading from Blue Anchor Road in a northeasterly direction, in the Town of Hammonton, County of Atlantic. The weather was clear and at the point of the intersection there are two sets of tracks, one set for the north-bound trains from Atlantic City, and the second set for south-bound traffic to Atlantic City. The train was a New York express which left Atlantic City at 3:10 P. M., and was scheduled to arrive at New York at 5:50 P. M., and

was running on scheduled time as it passed through Hammonton at a speed of seventy-five miles per hour. The plaintiff Donato Grasso was proceeding in a northeasterly direction on Fifteenth Street and intended to proceed over the crossing. There was an additional occupant of the truck who was riding on the front seat with the plaintiff Donato Grasso and he sustained injuries which resulted in his immediate death so that his testimony was consequently not available. The conduct of the plaintiff in reaching the north-bound tracks was tersely described by him as follows: He was proceeding ten to twelve miles an hour after he left Egg Harbor Road. He brought the truck to a complete stop "even with the bank" "near the crossing" "closer than twenty feet" from the nearest rail. He stopped, looked and listened and while stopped, he looked to the right, to the left and then to the right again. He could see around twenty-five to thirty feet down the second track. Then he put the truck in first gear and started to go across and when he looked up to the right again, the train was "right on top of me." The right rear side of the truck was struck by the locomotive.

There were introduced into evidence a map resulting from a survey of the premises by a civil engineer of the defendant and numerous photographs (two in number by the plaintiff and nineteen in number by the defendant) of the general *locus in quo,* together with the testimony of witnesses on behalf of and other than the plaintiff and on behalf of the defendant relating to the scope and extent of the view at various locations along Fifteenth Street and at and adjacent to the intersection.

The defendant contends that the great weight of evidence in this case shows that Donato Grasso, Jr., failed to observe the duty of care which rested upon him and that (1) the testimony of the plaintiff to the effect that where he stopped "even with the bank" and made his observations which was "closer than fifteen feet" and "away closer than twenty feet" to the nearest railroad track he could "only see twenty-five to thirty feet" is contrary to the remaining evidence in the case as to the extent of the view at said location and that it can only be concluded that he either did not look or did not heed what was there for him to see and that (2) even if it

be true that his view was limited to twenty-five to thirty feet up the track at the point where he stopped "that it must be concluded that he was negligent" in failing to stop and make observations at a still nearer point where even he would have to admit that there was ample view available to him.

The duty of care resting upon the plaintiff was defined by the court in its charge to the jury and accepted by both parties, without exceptions as follows:

"The measure of conduct with respect to the operator of the automobile is that it was the duty of the operator of the automobile to exercise that degree of care and prudence which a reasonably prudent person would exercise under like circumstances. He should observe that degree of care, precaution and vigilance which the circumstances justly demand."

A railroad is a known place of danger and at the highway crossing, the railway company had the prior right of way and the failure of those in charge of the locomotive to give the prescribed or customary audible warning does not relieve a traveler on the highway from his duty to exercise that degree of care and caution which the law requires of one entering a place of known danger.

The plaintiff's testimony that his view was limited to twenty-five to thirty feet down the second track at the point where he stopped "even with the bank" "closer than twenty feet" from the nearest rail is contrary to the remaining evidence in the case. His witness, David M. Adams, testified at that point (twenty feet from the near track) you could see at least a quarter of a mile.

However, accepting as a postulate the plaintiff's testimony of the view (of only twenty-five feet to thirty feet of an approaching train), when he proceeded in first gear from a stationary position to cross, he had to travel twenty feet (the point of stop) plus twelve feet two inches (the distance from the west rail of the north-bound track to the west rail of the south-bound track) to reach the west rail of the north-bound track and then to traverse it to reach a point of safety. When he looked again the train was "on top of him." The rule of effective observation as defined in *Conkling* v. *Erie Railroad Co.* (*Court of Errors and Appeals*, 1899), 63 *N. J. L.* (at p. 342); 43 *Atl. Rep.* 666, 667, namely:

"* * * the duty of the traveler on the highway does not stop with looking and listening, but he must exercise care to select a position from which an effective observation can be made, and he must also exercise care to make the act of looking and listening reasonably effective," together with the conclusively demonstrated unobstructed view of an approaching train by the photographs when ten feet and less from the nearest rail further disposes of this decision. During this time, his conduct clearly spells negligence which proximately contributed to the collision. If he had stopped short of the west rail of the south-bound track for an instant—he was in a place of safety—and looked toward Hammonton he could not have failed to see the train which struck him. The exercise of reasonable prudence would have protected him from injury. The following language borrowed from the opinion in the case of *Dourte & Irelan* v. *Pennsylvania Railroad Co.* (*Supreme Court,* 1928), 6 *N. J. Mis. R.* 559 (at *p.* 660) ; 142 *Atl. Rep.* 440, is particularly appropriate:

"According to his own story, his conduct was very largely the cause of the accident. If he could not see in the direction from which the train was approaching from the place where he was sitting in the truck, it was his duty, not only for his own protection, but for the protection of his master's property, to change his position to one from which he could see, or, if it was impossible to observe the approach of a train from any place in the truck then it was his duty to get out of that vehicle and to go forward and make the observation necessary for his own protection and that of his master."

The verdicts for the plaintiffs Donato Grasso and Carmen Grasso, Sr., are manifestly discordant with the pertinent law and with the clear weight of the evidence.

The rule as to the verdicts of the plaintiffs Donato Grasso, by his next friend, Carmen Grasso, Sr., and Carmen Grasso, Sr., in his own right, is granted and made absolute and a new trial granted, and as to the verdict of the plaintiff Carmen Grasso, Jr., the rule is denied and discharged.

An appropriate rule may be presented.