Roberts v. The Quincy, O. & K. C. Ry. Co.

James Roberts, Respondent, v. The Quincy, Omaha and Kansas City Railroad Company, Appellant.

### St. Louis Court of Appeals, January 13, 1891.

1. **Justices of the Peace : JOINDER OF CAUSES OF ACTION.** Several causes of action may be joined in one suit before a justice of the peace ; the only restriction is that causes of action founded in contract should not be joined with those founded in tort.

2. **Practice, Trial : JOINDER OF INCONSISTENT CAUSES.** When several causes of action united in one suit are inconsistent, so that the proof of one necessarily disproves the other, and their joinder would otherwise be permissible, the circuit court should, at the request of the defendant, require the plaintiff to elect before trial on which one he will proceed, and may do so of its own motion.

3. ————: **ELECTION BETWEEN SEVERAL COUNTS FOR SAME CAUSE OF ACTION.** If several counts in a petition are different consistent statements of the same cause of action, so that only one recovery can be had, *semble* that the court, if requested by the defendant, should compel the plaintiff at the close of his evidence to elect on which of the counts he will take the verdict of the jury, and it may do so of its own motion ; but no opinion is expressed as to whether a refusal of the court to require such election would be prejudicial error.

4. **Railroads : KILLING OF STOCK : OBLIGATION TO FENCE.** The statutory obligation of a railroad to fence the road does not extend to crossings of highways, whether *de jure* or *de facto*. *Held*, accordingly, in an action for the killing of stock, predicated on the failure of the railway company to fence where its road crossed a highway, that it was immaterial whether the highway was maintained by work under a road overseer or not.

*Appeal from the Lewis County Circuit Court.*—Hon. Ben. E. Turner, Judge.

Reversed and remanded.

*John P. Butler*, for appellant.

*Blair & Marchand*, for respondent.

ROMBAUER, P. J.—This is an action to recover double damages for the killing of plaintiff's horses by defendant's locomotive. The petition as originally framed contained five counts, but the third count was dismissed before trial. The remaining counts claimed damages on the following grounds : *First.* A failure to erect fences and cattle-guards along defendant's road where it runs through inclosed fields. *Second.* A similar failure where it runs through uninclosed lands. *Fourth.* A failure to maintain a sufficient crossing over a public road. The fifth count purports to state a cause of action for single damages under section 2124 of the statute, but is fatally defective in its averments in not showing that the horses were killed at a place where the railroad company *may fence.* The cause was tried by a jury resulting in a judgment for plaintiff, and the complaints are that the court erred in not compelling the plaintiff to elect before trial on which count of his petition he would proceed ; in admitting illegal evidence ; and in misdirecting the jury in its instructions.

Actions of this character originate, as a rule, before justices of the peace, where no formality of pleading is required. The only restriction to joining several causes of action in proceedings before justices is, that causes of action founded in contract should not be joined with those founded in tort. R. S. 1889, sec. 6137. In cases originating in courts of record the rule is different. The statute expressly provides that causes of action can not be united in the same petition, unless they belong to one and the same class of the seven classes enumerated in section 2040, Revised Statutes, 1889. When causes of action belonging to different classes have been improperly united, the defendant may demur under section 2043, Revised Statutes, 1889.

The third of these classes comprises injuries with or without force to persons or property, or either. This, of

Roberts v. The Quincy, O. & K. C. Ry. Co.

course, means several distinct injuries, but the supreme court has intimated repeatedly that, even where there is only one cause of action, and only one recovery can be had, the plaintiff may state it in different counts, for the purpose of so varying the form of the statement as to meet any possible state of the proof. *Brinkman v. Hunter*, 73 Mo. 172, 179, and cases cited. But unless the office of pleadings is wholly subverted, this rule can apply to those cases only wherein the various statements in the different counts are not necessarily inconsistent or contradictory, because the same rule, which prohibits inconsistent defenses, necessarily prohibits inconsistent counts. The office of pleadings is to produce issues of fact or law, and, as the proof in all cases must correspond with the allegations made, it would lead to the most absurd results, if the plaintiff in support of one count of his petition were permitted to adduce evidence, the tendency of which is to directly contradict his averments in another count of the same petition.

It results from the above, as the correct rule of practice, that where several counts in the same petition are inconsistent, so that the proof of one necessarily disproves the other, the court should, if requested by the defendants so to do, and may, of its own motion, compel the plaintiff at any time to elect on which one of the inconsistent counts he will *proceed to trial.* If, on the other hand, there is no necessary inconsistency between the counts, but they are for the same cause of action, so that only one recovery can be had, it would seem to be the better practice that the court should, if requested so to do, and may of its own motion, upon the close of plaintiff's evidence, compel him to elect on which of the several counts he will take the verdict of the jury, as this practice alone will enable appellate courts to review intelligently the rulings of the trial courts upon evidence and instructions. We are not

prepared to say, however, that the court's refusal thus to limit the plaintiff at the close of the evidence would, in any case, amount to prejudicial error under the decisions in this state.

In the case at bar there is no such inconsistency as would have entitled the defendant to compel the plaintiff to elect. A railroad may run between inclosed fields and uninclosed lands at the same point, since fields may be inclosed on one side of it, and uninclosed on the other. It could also, at the point where the stock came upon the track, run along a wagon road, and a liability might attach to the railroad company for not fencing its side towards the road, or for not maintaining the crossing of that road over its tracks. Either of these failures may have caused the injury complained of, and the plaintiff had a right to proceed for either or all together, although he was limited to a single recovery. The first error assigned is, therefore, not well assigned.

In order to pass intelligently on the other errors assigned, we annex hereto a plat, which was used by plaintiff's witnesses in giving their testimony, and which is essential to a clear understanding of the testimony and the rulings of the court thereon.

The plaintiff is a tenant on the Larue farm, which is east of the Nunn land. For twenty years or more there was a traveled road running along the western fence of the Larue farm. In 1867, Nunn built a fence on the eastern side of his land and north of the present railroad, leaving this road in a lane about twenty-five feet wide. The railroad was constructed in 1871, and all the testimony concedes that this road was then in existence ; that it was traveled by all who saw fit to use it, and that it crossed the railroad at point A on the accompanying plat, and that it was not closed by gates anywhere. At what exact date Nunn's land south of the railroad was fenced does not accurately appear, but it would seem it was fenced some eight or ten years ago, so as to leave the road south of the railroad also

an inclosed lane. The plaintiff's horses came from the north side of the road and were struck on the crossing marked B on the plat, and by the force of the collision they were carried over the cattle-guard into Nunn's field, where they were found dead at the points marked on the plat. Some eight or ten years ago the owners of these lands erected gates at the termini of this lane, where it on either end connects with public roads. These gates were not locked, and were hung there for the owner's convenience, and not for the purpose of interfering with the travel of anyone.

Many years ago, the exact date does not appear, the crossing at point A was washed out by rains, and became impracticable. A new and safer crossing was constructed at point B, which was on grade. Nunn thereupon moved his fences west and connected them with the cattle-guard which the railroad company removed westwardly. This caused the bend on the western side of the lane on the railroad's right of way, as shown on the plat.

This being the uncontroverted evidence, it is clear that the court erred in permitting the plaintiff to give evidence, against the defendant's objection, that the road was never worked by the road overseer. The defendant claimed that, if this road was traveled and used by the public, it was not necessary that it should be worked under the direction of the county court to constitute it a public road, but the court declared that all these facts were necessary, to constitute it a highway. It was decided in *Walton v. Railroad*, 67 Mo. 56, that a private road is a highway, and a public highway, within the meaning of what is now section 2124 of the revision of 1889, and that the company cannot lawfully close it by its fences. This road was found there by the company when it built its railroad in 1871, and the uncontroverted evidence concedes that it had been traveled by the public for a period of twenty years

or more, and it is wholly immaterial whether the county court ever improved it or not.

For the same reason the court erred in instructing the jury "that the lane crossing the railroad at the point, where said mares and colt are alleged to have been killed, was inclosed land within the meaning of the statute."

This instruction not only told the jury, as a matter of law, that such lane was no road, but also told them that it was inclosed land, we presume on the theory that the ends of the lane were closed by gates. The court could assume neither of these facts, even if there would have been evidence to support them, and as above seen there was no evidence to support them. The testimony fails to show any dereliction of the railroad company under the fencing laws, and, if any recovery is to be had in this case, it must be based on the negligence of the company in some other respect.

The judgment is reversed and the cause remanded. All the judges concurring, it is so ordered.

### ON MOTION FOR REHEARING.

ROMBAUER, P. J.—The plaintiff's counsel presses with great earnestness the proposition that the road in question was not a public road *de jure*, and, hence, the company was bound to fence it. He also calls our attention to the fact that the private road referred to in *Walton v. Railroad*, 67 Mo. 56, was by statute a road subject to public use, and, hence, that case is no authority. The conclusive answer to this argument is found in *Luckie v. Railroad*, 76 Mo. 639, and *Brown v. Railroad*, 20 Mo. App. 427, which expressly decides that railroad companies are not required to fence across highways *de facto*.

All the judges concurring, the motion for rehearing is overruled.