JAMES ROBERTS, Respondent, v. QUINCY, OMAHA AND KANSAS CITY RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 16, 1894.

Law and Fact: ILLEGITIMATE INFERENCES BY JURY. When a jury draws from facts in evidence an inference in favor of a party, which is opposed not only to the probabilities arising from surrounding circumstances, but also to the testimony of all the eye witnesses of the occurrence, and likewise to the inferences drawn by such party himself at former trials of the cause, and the eye witnesses are in no wise impeached, a due regard for the law requires that the verdict should not be permitted to stand.

*Appeal from the Lewis County Circuit Court.*—HON. BEN E. TURNER, Judge.

REVERSED AND REMANDED (*with directions*).

*John P. Butler* for appellant.

*Blair & Marchard* for respondent.

ROMBAUER, P. J.—This is the third appeal of the defendant in this case. Our opinions on former appeals are reported in 43 Mo. App. 287, and 49 Mo. App. 164, where the facts surrounding the accident, as the plaintiff then claimed them to be, are fully set out. A reference to these opinions, and to some additional facts developed at the last trial, is all that is deemed essential for an understanding of the points of law arising on this appeal.

The action is one for recovery of double damages under the railroad fence law. Three of plaintiff's horses (two mares and one colt) were killed by contact with the defendant's locomotive on February 15, 1889. When the case was first here, the plaintiff's own evidence conclusively established the fact that the horses were struck on a road crossing, and by the force of the collision were carried over a cattle guard into an adjoining field, where they were found dead. The case turned upon the question, whether the place where the horses came upon the railroad and were struck was or was not a highway *de facto.* We held that under the uncontroverted evidence it was a highway, that the defendant was not bound to fence it, and that no recovery could be had for its failure to fence it. We reversed the case for misdirection of the jury by the court on the question of highway or no highway.

The case was thereupon retried, and the plaintiff tried to show by inferential evidence that the horses were not struck on the crossing at all, but were struck and killed inside of an inclosed field into which they presumably got from the highway owing to the insufficiency of a farm fence, which at that point constituted a railroad fence. The plaintiff again recovered a verdict for all the three horses, but the trial court compelled him to remit as to two, holding that there was no evidence warranting a recovery as to them. The defendant appealed from that judgment, and we reversed it on the ground that the court misdirected the jury in permitting them to find for the plaintiff even though the animals first came upon the defendant's right of way at some point where the defendant was not bound to fence. In passing upon the evidence upon the second appeal we held that it was insufficient to establish any liability as to two of the animals, as it was quite clear that they came upon the track at the

crossing of the highway. We added that at another trial (unless there were other new developments in the evidence) the recovery should be confined to one animal.

At the last trial the plaintiff again recovered a verdict for the killing of the two mares. The defendant assigns for error that there is no evidence to support this verdict, and that at most the recovery should have been limited to one of the animals, since there are no other new developments in the evidence, except a change in plaintiff's own testimony from that given by him at the two former trials. The defendant also complains of the refusal of instructions asked by it, and of the admission of illegal testimony against it.

We do not deem it necessary to go over the evidence in detail. The plaintiff's sworn statement made to the defendant immediately after the accident is to the following effect:

"*Q.* Did the injury take place in an inclosed field? *A.* No.

"*Q.* Describe where the animal went on the right of way of the railroad company. *A.* At a private crossing belonging to Nunn, Whitacre and Laurie.

"*Q.* Are your answers made from your own knowledge, or information derived from others? *A.* My own."

The plaintiff's own evidence given at the former trial was as follows: "*Q.* You examined into the matter, when you went down there and found them (the horses). Where did they have the appearance of having been struck? *A.* They were struck somewhere about the crossing here.

"*Q.* On that crossing? *A.* Yes, sir.

"*Q.* They were struck on the crossing? *A.* Yes, sir." Again he says: "There were two of them just knocked through the cattle guard; they laid right

close together, I reckon there was not four foot space between them." And again he says: "They were knocked clear through the cattle guard into Mr. Nunn's land, or in his field; they were lying close to the cattle guard, and the old mare was thirty steps west of the cattle guard. I think she had run on the railroad."

At each of the trials, including the last, there was evidence of a recent break in the boards or planks connecting the fence with the cattle-guard, and when the case was last here we held that, if the horses caused this break in passing at the date of the accident from the road into the field, the plaintiff could not recover. While there was some evidence at all of the trials, that the fence separating the road from the field in which the horses were found dead was not a lawful fence in height, the plaintiff himself testified that it was sufficient to turn stock, unless breachy, and that he saw no indication of the horses having broken into that field at any place over said fence.

There was testimony at the last trial for the first time of the defendant's engineer and fireman, the latter of whom is not now in the defendant's employ. They were the only witnesses of the accident—which occurred in broad day light—and testified that the animals were struck in the lane upon the crossing of the road, and were carried by the pilot or cowcatcher into the field. It will be thus seen that the inference, which the plaintiff himself drew from the appearance of things immediately after the accident and at the two preceding trials, was corroborated by the testimony of eye witnesses at the last trial. Nor did the plaintiff at the last trial endeavor in any manner to explain the inferences he himself drew at the preceding trials, but he gave evidence of facts from which his counsel argues another inference is admissible, namely, that all the three horses, after having broken into the road

from the plaintiff's stalk field pasture, broke into Nunn's pasture *at some other point than at the cattle guard*, and that they were struck not on the road, but inside of Nunn's field.

We concede the rule to be that where, from a certain state of facts shown, different inferences may reasonably be drawn, the mere fact that the jury draws the least probable of these inferences is not, of itself, sufficient ground for vacating their verdict on appeal. But, where the jury draws an inference in plaintiff's favor from facts shown, which is opposed not only to the probabilities arising from surrounding circumstances, but also to the testimony of all the eye witnesses of the occurrence, and likewise to the inferences drawn from the same facts by the plaintiff himself, and where the eye witnesses are in nowise impeached, a due regard for the law requires that their verdict should not be permitted to stand. *Friesz v. Fallon*, 24 Mo. App. 439; *State v. Patrick*, 107 Mo. 147, 179.

There was an *admissible* inference from the evidence at all the trials, that one of plaintiff's mares was struck inside of Nunn's inclosure, and came into that inclosure at some other point than at the cattle guard. We so held upon the last appeal, and, since the evidence then before us was not in that respect materially different from the evidence upon the last trial trial, we abide by that holding as now being the law of this case. We must, however, conclude that the jury were not warranted by any evidence in stretching this inference, in opposition to the testimony of unimpeached eye witnesses and of the plaintiff's own inferences, to the other animals.

There is no substantial error in the rulings of the court upon the evidence, nor in the giving and refusal of instructions. While the defendant's second instruction refused lays down a correct proposition of law, it

is sufficiently covered by the defendant's third instruction given, which reads as follows:

"Before the jury can find for plaintiff, they must believe from a preponderance of all the evidence in the cause that plaintiff's horses came upon defendant's railroad in Nunn's pasture, and were there struck and killed; and, unless they so believe and find, their verdict must be for the defendant."

The finding of the jury was for $300. The plaintiff's own testimony was that the two mares were of equal value, about $150 each. The court entered judgment for double damages found by the jury. As, in our opinion, the recovery for one of the mares was wholly unwarranted by any substantial evidence, we will reverse the judgment and remand the cause, with directions to the trial court to enter judgment for the plaintiff for the sum of $300. So ordered. All the judges concur.