SIKES et al., Respondents, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY et al., Appellants.

St. Louis Court of Appeals, November 18, 1907.

1. HIGHWAYS: Railroads: Fences. A railroad company is not required to fence its right of way at the crossing of a public highway, whether such highway is such *de jure* or *de facto*, whether it was acquired by condemnation, dedication or adverse user.

2. ————: Prescription: Expenditure of Public Money. Prior to the Act of 1887, Revised Statutes of 1899, section 9694, the adverse user of a public road for a period of ten years, by all who desire to use it, gave the public a prescriptive right to it; but since the enactment of that section, the expenditure of public money in addition upon it is necessary in order to divest the rights of adjacent proprietors.

3. ————: ————: ————. The effect of that section is to permit an adjacent owner to obstruct or fence up a highway however long the period of adverse user, unless there has been an expenditure of public money upon the highway.

4. ————: ————: Railroads: Fences. The user of a highway by the public a sufficient length of time to make it a public highway *de facto* will excuse a railroad company from fencing its right of way across it, regardless of whether there has been an expenditure of public money upon it or not.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*L. F. Parker* and *Moses Whybark* for appellant.

(1) Railroads are not authorized to fence across a public road, whether such road be one *de jure* or *de facto*. Gilz v. Railroad, 65 Mo. App. 445; Lucky v. Railroad, 76 Mo. 639; Roberts v. Railroad, 43 Mo. App. 287; Henderson v. Railroad, 36 Mo. App. 113; Brown v. Railroad, 20 Mo. App. 427; Carter v. Railroad, 69 Mo. App. 295; State v. Walters, 69 Mo. 463. And a private road is a public highway not authorized to be fenced. Walton v. Railroad, 67 Mo. 56. (2) The court took the position that, before this road could be recognized as a public road, there must have been a dedication of the same by the owner, he intending to do so. In this the court erred. Public roads may be established in this State in three ways: (a) By a proceeding in the county court. (b) By dedication and use by the public. (c) By adverse possession. The cases illustrate this. Golden v. Clinton, 54 Mo. App. 100; Becker v. St. Charles, 37 Mo. 13; Moore v. Hawk, 57 Mo. App. 495.

*Russell & Deal* for respondents.

The instructions asked by the defendant and refused by the court have no application to the facts in the case at bar and were therefore properly refused. The kind of road in question in Walton v. Railroad, 67 Mo. 56, was a private road established in the manner pointed out by statute. The language of the opinion clearly shows this. Jenkins v. Railroad, 27 Mo. App. 583; Brinck v. Collier, 56 Mo. 161; Railroad v. Woolard, 60 Mo. App. 631; Coberly v. Butler, 63 Mo. App. 556.

NORTONI, J.—This is a suit for double damages under the railroad fence statute, section 1105, Revised Statutes 1899. The statute referred to requires the companies to erect and maintain lawful fences along the sides of their road for the purpose of preventing animals

from going upon the tracks. It is provided therein that double the value of the animals killed by reason of the railroad's failure to fence, may be recovered. Plaintiffs suffered the loss of several horses and mules, all of which entered upon the track and were killed by defendant's locomotive engine where a wagon road crosses the railroad tracks. In the circuit court, the plaintiffs prevailed and recovered a verdict assessing their damages at $450. This amount being double by the court on motion, as is the practice, judgment was entered in their favor for $900 and defendant appealed. The defendant insists the judgment should be reversed for the reason the animals entered upon the track and were killed upon the crossing of a public road within the meaning of the adjudicated law, and therefore no liability attaches to it on account of such killing, for the reason the defendant is neither required nor permitted to erect fences at the crossing of public roads. Plaintiffs' counsel concedes the familiar law proposition invoked by defendant but insists it has no application to the facts in proof for the reason the wagon road, on the crossing of which the animals entered and were killed, was not a public road within the meaning of the law. Plaintiffs maintained in the circuit court and argue here that the road in question is nothing more than a private way subserving the convenience of a few farmers and therefore the defendant was not justified in leaving the space occupied by it unfenced as the crossing of a public highway. The sole question presented for decision therefore is, was the road involved a public road either *de jure* or *de facto*. If it was either of these, the defendants were under no obligation to fence the same and plaintiffs cannot recover. All of the proof disclosed, in fact, it is conceded for that matter, that the animals entered upon defendants' track and were killed upon the road crossing. In order to ascertain the truth with respect to whether or not this

road is a highway, either *de jure* or *de facto* it is nec-
essary to examine the evidence in that behalf.  The rele-
vant facts are as follows:

The road in question, as it now stands, is about
one and one-half miles in length.  About one mile of this,
the portion east of the railroad, has been a road for
about fifty years.  About one-half mile of it, that portion
west of the railroad, has been used as a road for about
fifteen years.  The road runs from Kings Highway on
the east, due west through a lane about twenty-five feet
wide to the woods in what was formerly swamps.  Kings
Highway above referred to is a public road running from
the city of Cape Girardeau to the city of New Madrid.
It is said to be an ancient thoroughfare established dur-
ing the period when the King of Spain exercised sov-
ereignty here.  It seems to be about one and one-half
miles west of Kings Highway to the timber and what
was probably a swamp before the country was drained.
This territory on the west of Kings Highway and east
of the timber was settled and converted into farms many
years ago.  The country occupied by the farms was
prairie land known as Big Prairie, and it was important
that the adjacent proprietors and others should have a
way of ingress and egress to and from the timber lands
mentioned for the purpose of hauling wood, rails, etc.,
as well as a way for stock to pass back and forth from
the range located there.  In view of these facts, about
fifty years ago the adjacent proprietors opened the lane
mentioned from Kings Highway west to the woods,
which woods were then about where the railroad now
runs.  That portion of the road as far west as the rail-
road, has been used by the public about fifty years.
The senior Mr. Sikes testified that he passed over the
same to school more than forty years ago.  One of his
witnesses testified to having aided his father haul lum-
ber over the road nearly fifty years ago.  The evidence
shows that the road or lane is one-half on the lands

of one of the adjoining proprietors and one-half on the lands of the other; or, in other words, the land line dividing the neighboring farms is the center of the lane or road. At the point where the animals entered and were killed, one-half of the road traverses the lands and adjacent to the line of one of the plaintiffs, the elder Mr. Sikes, who is the father of his coplaintiff, and the other one-half of the road is adjacent to the line and on the lands of his neighbor, Mr. Hunter. There has never been any public money expended by the county upon the road nor has the road overseer ever expended any public labor thereon. Nevertheless the road has at all times since its origin, been open to the public travel, as given in evidence by Mr. Sikes and all of the witnesses who had occasion to speak on the subject. The neighbors one and all, members of the general public, and every person who so desired, passed over the road leading from Kings Highway to the timber, on foot, horseback, or in wagons whenever occasion required. Cattle, horses and other animals passed back and forth and were driven to and fro over the same for fifty years without let or hindrance or without question from any source; and in fact one residence, at least, the one on the Hunter farm nearest the railroad and now occupied by Mr. Cook, was built many years ago facing this road and within about fifty feet of it. The defendant company constructed its railroad about four or five years since. The railroad runs north and south, parallel with and about one mile west of Kings Highway, at which point it crosses the wagon road at right angles. When the railroad was built, a regular public road crossing was constructed where the road crosses, and the usual printed sign of "Railroad Crossing" put up thereat. Cattle-guards and the usual wing fences were placed at either side of the crossing, and the people, one and all continued to use the road without interruption as before, except the plaintiff and a neighbor, soon there-

after, erected a gate across the wagon road about two feet west of the west line of the railroad right of way. The purpose of this gate was to prevent stock, running at large in the timber, from passing upon the railroad track. The gate was not locked and persons passing over the road could open and close the same if they so desired. The result was, it stood open a large part of the time, as it was when the plaintiffs' animals were killed. As said above, that portion of the road from the railroad east to Kings Highway, has been used by the public for about fifty years. The evidence shows that portion of the road from the railroad west to the woods, about one-half mile in length, to have been placed there about fifteen years since, the proof being that as the adjacent proprietors cleared up the wood land westward from about where the railroad now runs and converted it into fields, they extended the lane and the road therein further west. Precisely as above stated with respect to the portion east of the railroad, this extension was at all times open to public travel and no public moneys or labor was expended thereon. Plaintiffs' animals came upon the railroad from the west and over and upon that portion of the road which has been in existence about fifteen years.

It has frequently been determined by the courts of this State that the railroad companies are neither required nor permitted to fence their railroads at the crossing of public roads and it is immaterial whether such roads are *de jure* or *de facto* public highways. It is sufficient that they are public highways established either by proceedings had under the statute for that purpose, or by dedication of the owners of the lands adjoining or by adverse user for such a length of time as will confer a prescriptive right upon the public, and the doctrine obtains, as given by Mr. Rorer, that: "It is not for such companies to settle the matter, or to know whether roads used as public highways are legally

established, and are such in point of law or not. It is enough for them to know that, practically and ordinarily, roads are used and treated as such by the public." [1 Rorer on Railroads, 622. See also Brown v. Railway Co., 20 Mo. App. 427.] Judge ELLIOTT says: "*If the crossing is used by the public,* the company is excused from fencing, and it is immaterial whether the right to cross was acquired by condemnation, prescription, dedication or otherwise." [Elliott on Railroads, sec. 1193.] The doctrine that railroads are not required to fence across public roads *de facto* is pointedly adjudged in the following Missouri cases. [Luckie v. Railway, 76 Mo. 639; Brown v. Railway, 20 Mo. App. 427; Roberts v. Railway, 43 Mo. App. 287; Henderson v. Railway, 36 Mo. App. 109; Carter v. Railway, 69 Mo. App. 295; Jackson v. Railway, 66 Mo. App. 506; Giltz v. Railway, 65 Mo. App. 445; Jenkins v. Railway, 27 Mo. App. 578; Dow v. Railway, 116 Mo. App. 555; 92 S. W. 744.] It has been many times adjudged by the courts of this State, and in fact the rule was well established in our jurisprudence to the effect that the public might acquire a prescriptive right in a road by nothing more than a continuous adverse use of the same for a period of ten years. And indeed this was true even though the road may not have been established under the statute by the proper authorities nor the lands over which it passes dedicated to the public by an unequivocal act on the part of the proprietors thereof. Under the doctrine of those cases, which is the law quite universally as we understand it, it was sufficient if it be shown that for more than ten years there had been a continuous adverse user as a public road, by one and all who so desired. In such case the user was sufficient to and did constitute the same a public road by prescription. [See Zimmerman v. Snowden, 88 Mo. 218; State v. Wells, 70 Mo. 635; State v. Walters, 69 Mo. 436; Dow v. Railway, 116 Mo. App. 55, 92 S. W. 744.] Our statute (R. S. 1899, sec.

9694), has materially modified this doctrine, however, by introducing the additional element requiring the expenditure of public money or public labor in addition to the user mentioned in order to divest the rights of the proprietors as against the public use. This statute and the phase of the question it suggests, will be more particularly noticed in a subsequent portion of the opinion. So far as the railroad company is concerned, when considered with reference to its obligation and right to construct crossings for *de facto* as well as lawfully established roads, it is wholly immaterial whether or not public money or labor has been expended upon such roads if they have been and are continuously used by the public for more than ten years. Such user renders them roads *de facto* for the purpose of determining the course to be pursued by the railroad with respect to constructing crossings therefor. [Dow v. Railway, 116 Mo. App. 555, 92 S. W. 744; Roberts v. Railway, 43 Mo. App. 287.] This feature of the matter will be more fully considered hereafter when we come to examine the statute.

All of the proof introduced in the case goes to show so much of the road in question as was east of the railroad has been travelled by the public for any and all purposes, for about fifty years. Mr. Sikes himself said he had passed over it nearly that many years ago going to school, and another witness, more than forty years before, had assisted his father in hauling timber or lumber thereon. It is said no public money or labor has been expended on the same, however, during all of those years. This may be true. Such is certainly an immaterial circumstance insofar as all of that portion of the road east of the railroad was concerned, which was established by user long prior to the passage of our statute (R. S. 1899, sec. 9694).

The animals entered upon the railroad right of way from the west over that portion of the road which had been in existence only fifteen years. It is therefore ar-

gued by counsel for plaintiffs that this portion is not a public road such as defendant was required to fence for the reason no public work or money had been expended thereon. The proposition advanced is that, conceding this portion of the road to have been the subject of such an user on the part of the public for fifteen years as would operate to establish the same as a highway *de facto* by adverse user within the doctrine above referred to, nevertheless our statute (R. S. 1899, sec. 9694), which has been parcel of our law for a period of time greater than the period of user upon this portion of the road, so influences the matter as to preclude its establishment as a public highway by prescription. Now the statute referred to was enacted in the year 1887 and has therefore been in force twenty years. [See Laws of Missouri, 1887, p. 257.] It reads:

"All roads in this State that have been opened by any order of the county court, and a plat made thereof and filed with the clerk of the county court of the county in which such roads are situated, and have been used as a public highway by the traveling public for a period of ten years or more, shall be deemed legally opened and established county roads, notwithstanding there may have been irregularities in the proceedings had to establish and open such roads; and non-user by the public for a period of ten years continuously of any public road shall be deemed an abandonment of the same: *Provided*, that in all other cases than such as are hereinbefore provided for, no lapse of time shall divest the owner of his title to his land, unless, in addition to the use of the road by the public for the period of ten consecutive years, there shall have been public money or labor expended thereon for such period." [R. S. 1899, sec. 9694.]

In examining this statute and seeking to arrive at the legislative intention therein manifested, we must do so with the knowledge that the Legislature is presumed

to know the existing state of the law relating to sub-
jects with which they deal at the time they act on a
given question, and therefore are deemed to have dealt
with the matter in the light of the state of the law then
existing. [See Sutherland on Statutory Construction
(2 Ed.), sec. 447.] With this thought in mind, it will
be noticed the first part of the statute above copied is
in aid of the public road and remedial in its object, its
purpose being principally curative and to declare all
roads theretofore established by the authorities and used
as such for a period of ten years, to be public roads even
though irregularities intervened in the proceedings had
to establish the same. The profession is familiar with
the long line of decisions in this State adjudging pro-
ceedings had to establish county roads insufficient be-
cause of many jurisdictional infirmities and irregular-
ities therein, and this clause of the statute no doubt
found its origin in an attempt to cure such irregulari-
ties in public road proceedings as had not been brought
to the attention of the court in the period of time there-
in mentioned.

The next provision relates to what shall be an
abandonment of a public road and declares that ten
years non-user continuously by the public, shall amount
to an abandonment thereof. The Supreme Court had
decided in State v. Culver, 65 Mo. 607, that ten years was
not sufficient to evince an abandonment of a public road
and that no period of non-user by the public short of
twenty years would so operate. Indeed, in that case,
it seems the defendant was convicted for obstructing a
road on his own premises which the public had not used
and which he had had inclosed for more than ten years
before his indictment. The rule announced in that case,
when considered with reference to its facts, was severe.
It is quite certain this provision of the statute declaring
a continuous non-user of a public road for ten years an
abandonment of the same, was levelled at and intended

to overthrow that rule. Such was the result, at any rate, and manifestly it was the intention of the Legislature so to do.

The next clause of the statute like that last above referred to, is manifestly in favor of the landowner. It provides that in cases not otherwise provided for, "No lapse of time shall divest the owner of the *title* to his land." Now the law is abundantly well settled to the effect that a highway is an easement merely, and therefore the title or fee to the lands occupied by it remains in the adjacent landowner. The landowner continues to enjoy all of the rights of property incident thereto, subject only to the rights of travel and use as a highway vested in the public. [Williams v. Nat'l Bridge Plank Road Co., 21 Mo. 580; Pemberton v. Dooley, 43 Mo. App. 176; 15 Amer. & Eng. Ency. Law (2 Ed.), 415.] Indeed, this doctrine is so well understood in the law that it has many times been adjudged a deed conveying lands bounded by a highway or street conveys the fee of such lands to the center of the highway, if the grantor owns to the center, unless the contrary intention is expressed in the deed. [Grant v. Moon, 128 Mo. 43, 30 S. W. 328; Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, 25 S. W. 932.] And therefore, in view of the fact that the provision is, no lapse of time shall divest the owner of his *title* to the lands except under circumstances therein stated, we might pass the matter by saying the statute could have no application for the reason the public road established by adverse user or otherwise is no more than an easement at most and in no sense operates a divestiture of title or the fee of the owner. Such a ruling would be evasive, however, and in no sense meet the question presented. The purpose of the Legisature to further abrogate the rule of State v. Culver, and also to change the rule announced in State v. Wells, 70 Mo. 635, is obvious. A fair construction of the clause of the statute now under consideration, in view of the state of

the law at the time of its enactment, is that it was intended thereby to provide that in the future when the landowner or other person was indicted and tried for obstructing a public road, as in the Wells and Culver cases supra, or injunction or other process was instituted for the purpose of restraining one in that behalf, and the proof relied upon to establish the road was an adverse user, such adverse user, however long its period and however constant its use, would be adjudged insufficient to support a conviction or other relief sought unless it appeared in addition to the use of the road for ten consecutive years, the public authorities had accepted, considered and treated the road as a highway and as an earnest thereof, had expended public money or labor thereon for such a period. From this view of the matter, it is obvious that had the railroad company failed to provide a crossing and proceeded to fence across that portion of the road sought to be established by user since the enactment of the statute, and it were proceeded against and convicted for obstructing the public road, such conviction could not be sustained for the reason the additional element of public expenditure which is essential under this statute to constitute the same a public road *de jure,* as contradistinguished from *de facto,* is not present. And of course the same rule would obtain with respect to the plaintiffs, who, since the railroad was built, have maintained gates a portion of the time across the road in question, it seems, without being disturbed by the public authorities. The statute certainly cannot be said to influence the question as to whether or not the railroad companies are required to fence or leave unfenced crossings of public roads *de facto,* for in such cases the railroads ought not to be required to examine and ascertain to a certainty what are and what are not public roads as a matter of law. And indeed, although the statute seems not to have been considered in those

cases, it has been twice pointedly determined by this court that is is not essential for public labor or money to have been expended upon a public road *de facto* in order to justify the railroad company in accepting and determining the same to be a public road for the purpose of providing crossings thereon. [See Roberts v. Railway, 43 Mo. App. 287; Dow v. Railway, 116 Mo. App. 555, 92 S. W. 744.] It is enough for the railroads to know that the road has been used and treated by the public as a highway for a long period of years and is still being so used. Under these circumstances, they are justified in omitting to fence across and in constructing crossings over their right of way for the same. It might be suggested that in this very case, had the defendant erected its fences across this road, leaving no crossing for those people who had constantly used one portion of it for fifty years and another portion of it for fifteen years, its conduct in that behalf would no doubt have entailed great inconvenience upon the people and have been the source of much litigation. The proper course for the railroad to pursue was to treat the road as a public highway and construct a crossing thereon, as it did. The defendant's peremptory instruction directing a verdict for it should have been given. The judgment is reversed. *Bland, P. J.,* and *Goode, J.,* concur.