NEW YORK LIFE INS. CO. v. RANKIN.

(Circuit Court of Appeals, Eighth Circuit. May 25, 1908.)

No. 2,581.

1. ACTION—JOINDER OF CAUSES—PLEADING—PETITION—SINGLE RIGHT OF RECOVERY DIFFERENTLY STATED IN DISTINCT COUNTS—INCONSISTENCY—MISSOURI STATUTE.

Under the reformed system of pleading in the state of Missouri, a cause of action upon a policy of insurance and a cause of action upon a compromise agreement respecting the claim under the policy may be joined in distinct counts of the same petition, where the counts are not inconsistent in matter of fact, and it appears therefrom that the plaintiff asserts but a single right of recovery, which is so stated and described in the two counts as to enable him to recover upon the policy or the compromise agreement, as one or the other may prove to be the true basis and measure of his right.

2. EVIDENCE—UNACCEPTED OFFERS OF COMPROMISE INADMISSIBLE.

Unaccepted offers to compromise claims or to purchase peace are inadmissible in evidence at the trial of controversies over the claims to which

they appertain, and should not be permitted to affect the rights of the parties or to influence the results of the trials.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 745–753.]

3. SAME—DECLARATIONS OF ATTORNEY—WHEN ADMISSIBLE AGAINST CLIENT—PERSONAL OPINION—LOOSE CONVERSATION.

The declarations of the general solicitor of an insurance company are inadmissible against the company, both when they are merely the expression of his personal opinion and when they relate to features of the company's business having no necessary connection with the duties of its law officer, and respecting which it is not otherwise shown that he is authorized to make admissions on its behalf.

4. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—PLAIN ERROR NOT ASSIGNED.

While errors not assigned in conformity with the rule on that subject will not ordinarily be considered, a plain error may be noticed, when justice requires it, though it be not so assigned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2968–2982.]

5. SAME—CURING ERROR—EVIDENCE ERRONEOUSLY ADMITTED SHOULD BE PLAINLY WITHDRAWN.

When evidence is erroneously admitted in circumstances when it is calculated to affect the determination of other questions than the one in respect of which it is admitted, the error is not cured by the mere elimination of that question; and, to cure the error, the court should plainly inform the jury that such evidence is entirely withdrawn from their consideration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4178–4184.]

6. WITNESSES—CROSS-EXAMINATION—FALSE ASSUMPTION OF FACTS.

In the cross-examination of a witness, it is not permissible to assume as true a damaging state of facts, without any reason to believe that there is a foundation of truth for it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 987.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Edward O'Bryan and Frederick N. Judson (John F. Green, on the brief), for plaintiff in error.

Frederick H. Bacon, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

VAN DEVANTER, Circuit Judge. March 15, 1898, the New York Life Insurance Company issued a policy upon the life of George A. Kimmel, of Arkansas City, Kan., whereby, in consideration of certain premiums to be paid to it, the company agreed to pay to Edna E. Kimmel, a sister of the insured, the sum of $5,000 and an additional sum equal to the total premiums received, if the insured should die before March 15, 1918. July 30, 1898, the insured disappeared. March 9, 1903, the sister assigned the policy to Lucien E. Wood, as receiver of the First National Bank of Niles, Mich., who was succeeded in that position by George C. Rankin. After the disappearance the sister and the assignee paid the premiums as they fell due, including the one for the year beginning March 15, 1903. March 22, 1904, the receiver, as

assignee of the policy, commenced an action against the insurance company; the petition being in two counts. The first count declared upon the policy in the usual way, alleging that the insured died on or about August 1, 1898. The second count, after stating the issuance of the policy, its terms, and the payment of the premiums, declared upon a compromise agreement by stating that the insured disappeared on or about August 1, 1898; that differences thereafter arose between the parties respecting the death of the insured and the liability of the defendant under the policy, the plaintiff claiming that the insured was dead, and had died about the time of his disappearance, and the defendant claiming that the death was not established; that on March 1, 1901, "by way of a full settlement, satisfaction, and compromise," the parties agreed that the death of the insured would be arbitrarily assumed to have occurred on March 1, 1904, and that, upon the delivery to the defendant of certain releases, it would forthwith pay to the plaintiff $5,987.71 in full satisfaction of the latter's claim under the policy; that the releases so required were duly procured and delivered to the defendant; and that it had then refused to pay the sum so agreed upon or any part thereof. The first count concluded with a prayer for a judgment for $7,736, the amount of the policy and the premiums received; and the second concluded with a prayer for a judgment for $5,987.71, the sum agreed upon in the alleged compromise. In its answer the defendant admitted the issuance of the policy, denied all the other allegations of the petition, and alleged that, if any such compromise agreement was made, it was procured by fraud, in this: that for the purpose of inducing the defendant to enter into such an agreement the assignee of the policy had presented to the defendant a large number of affidavits and so-called proofs of death, which contained many false statements as to the circumstances in which the insured disappeared, and as to his financial condition, character, business, and social habits, and from which there was fraudulently omitted many facts and circumstances tending to show that he was not dead, but had absconded and concealed himself to escape exposure and punishment for crimes which he had committed; that the defendant was deceived by, and made to rely upon, these false and fraudulent affidavits and so-called proofs of death; and that it would not have entered into any such agreement, except for the fraud so perpetrated and practiced upon it. In his reply the plaintiff denied the new matter contained in the answer, and alleged that the affidavits and proofs therein referred to had been presented to the defendant in August, 1900, and remained with it thereafter; that when they were presented the defendant was requested not to assume that they were conclusive, but to make an independent investigation; that the defendant had reasonable opportunity and ample time to investigate the facts; and that in entering into such compromise agreement it acted with full knowledge of them and without any concealment or fraud on the part of the plaintiff or his predecessors in interest. The trial resulted in a verdict and judgment for the plaintiff upon the first count, and the defendant prosecutes this writ of error.

The first ruling brought to our attention is the denial, at the beginning of the trial, of a motion by the defendant to require the plaintiff

to elect upon which of the two counts in the petition he would proceed; the contention being that they were inconsistent. There was no error in this. The two counts were not inconsistent in matter of fact, because all that was alleged in either could be proven without disproving anything alleged in the other. This is frankly conceded; but it is urged that they were inconsistent in matter of law, because a right to recover upon the policy under the first count could not coexist with a right to recover upon the compromise agreement under the second count. It is true that the two rights could not coexist; but the petition, rightly interpreted, did not assert the contrary, but only that the plaintiff had a right of recovery—a single right, which was so stated and described in the two counts as to enable him to recover upon the policy or the compromise agreement, as the one or the other might prove to be the true basis and measure of his right. Assuming that this was done in good faith and not without reasonable cause—and at the beginning of the trial such an assumption could have been reasonably indulged—it was not only unobjectionable, but sanctioned by common-law procedure and by the settled practice in the courts of Missouri and other states under the reformed Code. 1 Chitty, Pleadings (16th Am. Ed.) *424 et seq.; Little v. Blunt, 13 Pick. (Mass.) 473, 476; Bliss, Code Pleading (3d Ed.) § 120; 1 Bates, Code Pleading (1908 Ed.) 495; Thompson v. Minford, 11 How. Prac. (N. Y.) 273; Birdseye v. Smith, 32 Barb. (N. Y.) 217; Brownell v. Pacific R. R. Co., 47 Mo. 239, 243; Brinkman v. Hunter, 73 Mo. 172, 178, 39 Am. Rep. 492; Rinard v. Omaha, etc., Co., 164 Mo. 270, 284, 64 S. W. 124; Roberts v. Quincy, etc., Co., 43 Mo. App. 287.

The next matter which claims our attention relates to rulings permitting the plaintiff's attorney, when testifying as a witness, to give in detail the conversations and correspondence had between himself and the defendant's general solicitor, before the suit was commenced, in the course of an unsuccessful attempt to effect a compromise agreement. Part of his testimony, which is said to have been particularly objectionable, was as follows:

"I spoke to Mr. Hubbell (meaning defendant's general solicitor) about the efforts that had been made by the Pinkertons (meaning a search for the insured made at the instance of his relatives by the Pinkerton Detective Agency), and he stated to me that the New York Life Insurance Company had a detective department which was as far ahead of the Pinkertons as daylight was ahead of darkness. He made that statement to me on several occasions, and he further said that, the company having offices and agents in every part of the civilized world, it was impossible for a man to escape."

The witness being the plaintiff's sole attorney, his testimony was given in narrative form, and not in response to questions propounded in the usual way, where there is better opportunity to prevent the statement of what is inadmissible. When the testimony just quoted was given, the defendant asked that it be stricken out as being only a conversation between counsel, and as not tending to prove anything material; but the court ruled that it was admissible as bearing upon the defendant's facilities for ascertaining the facts and upon whether or not it had been deceived, and this, although it was also objected:

"The difficulty is that he is putting the cart before the horse. He is putting in testimony at length, which has no relevancy until he proves that there was an agreement."

The admission of the correspondence was objected to on the ground that it did not tend to show a compromise agreement, but simply steps in a futile negotiation; and in that connection the defendant requested that the letters be offered together, rather than separately, in order that the court might better rule upon the objection, but the witness was permitted to offer and to introduce separately such of the letters as he wished to present. The other letters were then called out upon his cross-examination. The entire correspondence, even when considered in the light of the witness' narration of the conversations, demonstrated that the attempt to effect a compromise had been unsuccessful, and that, in legal contemplation, the effort to prove an effective agreement of that character had been without any reasonable justification. Accordingly the court afterwards directed a verdict for the defendant upon the second count, but at no time were the jury instructed to disregard the evidence of such conversations and correspondence, or informed that it had no bearing upon the questions arising under the first count. Upon the principal of these questions—that is, whether the insured was dead or alive when the action was commenced—there was evidence which required that it be submitted to the jury in conformity with the decisions in Davie v. Briggs, 97 U. S. 628, 24 L. Ed. 1086, Fidelity Mutual Life Ass'n v. Mettler, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922, and Northwestern Mutual Life Ins. Co. v. Stevens, 18 C. C. A. 107, 71 Fed. 258; but as this evidence was indirect, gave rise to conflicting inferences, and was nearly balanced, there is reasonable ground for believing that the jury may have permitted matters which otherwise would have been regarded as unsubstantial to turn the scale. Part of the evidence related to an extended, but unsuccessful, search for the insured made on behalf of his relatives by the Pinkerton Detective Agency, and to a search made by the defendant, which was also unsuccessful, according to the plaintiff's evidence; and in that connection the court charged the jury that they could properly take into consideration, as bearing upon the question of life or death, "unsuccessful efforts made, if any, to ascertain the missing man's whereabouts."

As respects the correspondence, it may be conceded that the court did not commit any reversible error in permitting the plaintiff to offer and to introduce separately such of the letters as he wished to present, and that when, upon the introduction of the other letters, it was demonstrated that the attempt to effect a compromise had been unsuccessful, and that the effort to prove an effective agreement of that character had been without any reasonable justification, the defendant, if concerned lest the evidence of the futile negotiation might operate prejudicially against it, should have requested the court to strike out this evidence and to direct the jury to disregard it; but the fact remains that the plaintiff succeeded in getting it before the jury when, in fairness to the defendant, it plainly ought not to have been presented, and when, if offered in the manner requested by the defendant, it probably

would not have been admitted. In other words, the plaintiff succeeded in getting before the jury evidence that the defendant had been willing, for the sake of effecting a compromise, to assume the death of the insured, and that its general solicitor had favored a compromise, although the plaintiff's attorney knew, or should have known, that such evidence was wholly inadmissible; for, as was well said by Judge Sanborn, in speaking for this court, in Moffit-West Drug Co. v. Byrd, 34 C. C. A. 351, 352, 92 Fed. 290:

"It is the policy of the law to favor the settlement of disputes, to foster compromises, and to promote peace. If every offer to buy peace could be used as evidence against him who presents it, many settlements would be prevented, and unnecessary litigation would be produced and prolonged. For this reason unaccepted offers to compromise claims or to purchase peace are inadmissible in evidence at the trial of controversies over the claims to which they appertain, and should not be permitted to affect the rights of the parties, or to influence the results of the trials."

As respects the evidence of conversations before quoted, we entertain no doubt that it was both inadmissible and calculated to cause the jury to give undue weight to the fact, which some of the evidence tended to show, that the defendant had made an unsuccessful effort to ascertain the missing man's whereabouts. It was inadmissible, because what was said by the defendant's general solicitor was not the statement or admission of any distinct fact, but was at most the expression of a personal opinion, which was in no wise binding upon the defendant (Fidelity & Casualty Co. v. Haines, 49 C. C. A. 379, 111 Fed. 337; Insurance Co. v. Mahone, 21 Wall. 152, 157, 22 L. Ed. 593; Ohio & M. Ry. Co. v. Stein, 133 Ind. 243, 31 N. E. 180, 184, 32 N. E. 831, 19 L. R. A. 733; Boston & M. R. R. Co. v. Ordway, 140 Mass. 510, 5 N. E. 627), and because it was a loose conversation concerning features of the defendant's business which had no necessary connection with the duties of its law officer, and respecting which it was not otherwise shown that he had any authority to make admissions on its behalf (Stone v. Bank of Commerce, 174 U. S. 412, 421, 19 Sup. Ct. 747, 43 L. Ed. 1028; Ohio & M. Ry. Co. v. Levy, 134 Ind. 343, 32 N. E. 815, 34 N. E. 20; Horseshoe Mining Co. v. Miners' Ore Sampling Co., 77 C. C. A. 213, 147 Fed. 517; Pickert v. Hair, 146 Mass. 1, 5, 15 N. E. 79; Watson v. King, 3 Man., G. & S. 608; Petch v. Lyon, 9 Adol. & E. [N. S.] 147; Doe v. Richards, 2 Car. & K. N. P. 216).

Objection is made to our consideration of the question arising upon the admission of evidence of these conversations, because error is not separately assigned thereon with the particularity required by rule 11 of the rules of this court. Ordinarily the objection would not be without considerable merit; but as one of the assignments was intended to present the question, and as the rule contemplates that, when justice requires it, we may notice a plain error, though not assigned (see United States v. Tennessee, etc., Co., 176 U. S. 242, 256, 20 Sup. Ct. 370, 44 L. Ed. 452; United States v. Bernays [C. C. A.] 158 Fed. 792), we conceive it to be our duty, in view of the circumstances in which the evidence was presented, as before recited, to notice the error in its admission.

It is also urged that the error, if any, was cured when a verdict for the defendant was directed upon the second count. But we cannot so say. As before indicated, the jury were not instructed to disregard this evidence, or informed that it had no bearing upon the questions arising upon the first count. The court's remark respecting the purpose for which it was held admissible was apparently addressed to counsel, and the jury were not instructed that they could not consider it for any other purpose. It was of such a nature that it was calculated to affect them, in passing upon the question of the life or death of the insured, particularly as the evidence legitimately bearing thereon was so nearly balanced. And while the defendant might have requested that it be plainly withdrawn from the jury, after the basis assigned by the court for its admission had disappeared, that was not necessary; for it was inadmissible even on that basis, and was duly objected to when admitted. In these circumstances, to have cured the error, the court should have plainly informed the jury that this evidence was entirely withdrawn from their consideration. Washington Gaslight Co. v. Lansden, 172 U. S. 534, 554, 19 Sup. Ct. 296, 43 L. Ed. 543; Swift & Co. v. Johnson, 71 C. C. A. 619, 624, 138 Fed. 867, 872, 1 L. R. A. (N. S.) 1161.

Error is assigned upon the exclusion of several questions propounded to one Tillotson, a witness for the plaintiff, upon his cross-examination. The witness was a detective, had been in charge of the search for the insured made by the Pinkerton Detective Agency, and testified, upon his direct examination, to the character, extent, and details of the search, and to various clews which had been followed up in the effort to unravel the disappearance of the insured and to ascertain whether he was living or dead. As bearing upon the thoroughness of the search, and the weight which should be accorded to the fact that it had been unsuccessful, the defendant sought by the questions which were excluded to show that the detective agency had not been advised of certain questionable conduct and transactions of the insured, knowledge of which might have been of material advantage to it in making the search. A reasonable cross-examination along that line would have been clearly permissible; but the questions propounded and excluded were all subject to the objection that they assumed as true a damaging state of facts which was nothing less than an inexcusable exaggeration of what the evidence produced up to that time, and subsequently, tended to show. In short, there was no reason to believe that there was a foundation of truth for what was so assumed. In that form, the questions were rightly excluded. 3 Wigmore, Ev. p. 2344.

Error is also assigned upon the refusal of two instructions tendered by the defendant, but these require but brief mention. One might well have been given; but, as all that was of substance therein was incorporated in the charge as given, its refusal was not error. The other was properly refused, because it declared in terms that the insured, at the time of his disappearance, "was a criminal" and had indicated "that he was afraid of exposure and prosecution," when under the evidence these were matters of fact to be determined by the jury.

Other questions are discussed by counsel; but they are not proper-

ly presented by the assignments of error, and are not such as otherwise need to be noticed.

For the error before pointed out, the judgment is reversed, with a direction to grant a new trial.