NEW YORK, S. & W. R. CO. v. THIERER (two cases).

(Circuit Court of Appeals, Second Circuit. November 11, 1913. On Motion for Rehearing, December 18, 1913.)

Nos. 58, 59.

1. RAILROADS (§ 324*)—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.
    On the question of the negligence of a pedestrian, struck and injured by a train at a railroad crossing, the negligence of the railroad company, if any, is immaterial.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1020–1025; Dec. Dig. § 324.*]

2. RAILROADS (§ 324*)—CROSSING ACCIDENT—INJURY TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE—CROSSING SIGNALS—FAILURE TO GIVE.
    Failure of a railroad company to give statutory signals on the train approaching a crossing will not relieve a pedestrian, struck and injured by the train at the crossing, from contributory negligence, if he had an opportunity to avoid the danger.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1020–1025; Dec. Dig. § 324.*
    Duty to give warning signals at crossings, see note to Chesapeake & O. Ry. Co. v. Steele, 29 C. C. A. 90.]

3. RAILROADS (§ 327*)—CROSSING ACCIDENT—DUTY TO LOOK AND LISTEN.
    Under the New Jersey law, a pedestrian approaching a railroad crossing must look and listen for trains before attempting to cross.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. § 327.*]

4. RAILROADS (§ 327*)—CROSSING ACCIDENT—LOOK AND LISTEN—OBSTRUCTIONS.
    Where the view of a railroad track is obstructed, on a pedestrian's approaching a crossing, either by cars standing on an intervening track or by smoke or fog, he may not continue to walk across the tracks until he is able to see whether there is any danger, and is guilty of negligence unless he stops until he can see.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. § 327.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. RAILROADS** (§ 327*)—CROSSING ACCIDENT—LOOK AND LISTEN—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Plaintiff, on approaching a railroad crossing at night, saw certain freight cars at the crossing on an intervening track, passed between them to the second track, looked to the south, and at the same moment was hit by a train backing north on that track. She did not testify that she listened, except that she did not hear any bell or whistle. *Held* that, since she could not have looked until just as she stepped into the danger zone, she did not perform her duty to look and listen and was guilty of negligence as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056; Dec. Dig. § 327.*]

### On Motion for Rehearing.

**6. NEW TRIAL** (§ 68*) — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE — STATE STATUTES—APPLICATION.

P. L. N. J. 1910, c. 278, provides that in an action for injuries or death in a railroad crossing accident plaintiff shall not be nonsuited for contributory negligence on his part or on the part of persons for whom the suit is brought, but in all such cases it shall be left to the jury to determine whether the person injured or killed was exercising due and reasonable care under the conditions existing at the crossing at the time of the injury or death, and if the jury shall determine that the person injured or killed was not exercising such care the verdict shall be for defendant. *Held*, that such act does not abolish the defense of contributory negligence in such actions, nor entitle plaintiff to recover in spite of it, but is a mere regulation of procedure, requiring that such issue be submitted to the jury without in any manner impairing the right of the court to set aside a verdict for plaintiff in case he determines that the person injured or killed has been guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 135–140; Dec. Dig. § 68.*]

Coxe, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York; Thomas I. Chatfield, Judge.

Actions by Annie Thierer and by Joseph Thierer against the New York, Susquehanna & Western Railroad Company. Judgment for plaintiff in each case, and defendant brings error. Reversed.

Stetson, Jennings & Russell, of New York City (F. B. Jennings, W. C. Cannon, and R. L. von Bernuth, all of New York City, of counsel), for plaintiff in error.

Emanuel A. Busch (A. J. Rose and Alfred C. Petté, both of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. These are writs of error to the District Court of the United States for the Eastern District of New York upon judgments entered on verdicts in favor of Annie Thierer for $8,000 for personal injuries and of her husband, Joseph Thierer, for $500 for loss of her services and expenses of her cure. By stipulation the cases were tried together and one bill of exceptions signed.

The defendant, the New York, Susquehanna & Western Railroad Company, has three tracks crossing at right angles Second street in North Paterson in the borough of Hawthorne, N. J. Second

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

street runs east and west and the defendant's tracks run north and south. The west track is the single track main line between Hawthorne to the south and North Paterson to the north. East of that track is a siding and east of the siding is a storage track. The Thierer family lived on Forest avenue, which runs parallel to and a block east of these tracks with nothing intervening. At the time of the accident they had lived there seven months. Forest avenue and Second street are both dirt roads.

September 26, 1911, at 5 p. m., the plaintiff Annie Thierer left her house, walking north a block to Second street and then a block west to the railroad crossing. She saw freight cars at the crossing on the first two tracks and testified that as she passed between the cars on the siding or second track she looked to the south and was at the same moment hit by a train backing to the north on the west track. She was badly injured on the left side of her head and her left leg had to be amputated below the knee.

[1, 2] The defendant was charged with negligence for failing to ring a bell or blow a steam whistle as required by statute while the train was approaching the crossing. The verdict of the jury establishes this charge. The serious question, however, remains whether the plaintiff's own testimony does not show that she was guilty of contributory negligence. Upon this question the negligence of the railroad company is immaterial. The failure of the railroad company to give the statutory signal will not relieve the pedestrian if he has an opportunity to avoid danger. Pennsylvania R. R. Co. v. Righter, 42 N. J. Law, 180, 185; Conkling v. Erie R. R. Co., 63 N. J. Law, 338, 345, 43 Atl. 666. The law of New York is the same. Rodrian v. N. Y., N. H. & H. R. R. Co., 125 N. Y. 526, 528, 26 N. E. 741.

[3] The law applicable to the case is of course that of the state of New Jersey, where it arose. The highest court of that state holds that pedestrians, before crossing railroad tracks at grade, must look and listen. Mrs. Thierer said absolutely nothing about listening except that she did not hear any bell or whistle. In respect to looking, she said again and again that, while walking at her ordinary gait, she looked to the south and was struck by the train backing up from that direction the moment she looked. Of course at that moment she must have been within the overhang of the train, the very situation that the rule as to looking and listening is intended to prevent. She did not look before she crossed. Such looking and listening as she gave amounts to not looking or listening at all. If looking and listening after one is on the track satisfies the rule, it might as well not exist.

[4] It is also a fair inference from the rule that, where circumstances prevent a pedestrian from seeing, he must stop until he can see. Mrs. Thierer walked out of a place of safety without looking until she was actually in a place of danger. If the cars on the siding were south of the crossing, she obviously had an unobstructed view for a distance to the south increasing the further the cars are found to have been from the crossing. On the other hand, if they were on the crossing and close up to her, ordinary care required her to stop in a place of safety and look. The wholesome rule as to looking

and listening implies that this care must be exercised under circumstances where the pedestrian can hear and see. Otherwise it is useless. If there is a temporary obstruction to the view, such as smoke or fog, he cannot continue to walk across the tracks until he is able to see whether there is any danger. This is equally true of a permanent obstruction, such as the open cars, in this case, standing upon the siding, if they are to be regarded as permanent.

[5] The law of New Jersey is quite plain on this subject. The Court of Errors and Appeals said in Central R. R. v. Smalley, 61 N. J. Law, 277, at page 279, 39 Atl. 695, at page 696:

"The duty of a person who is about to cross a railroad track is to be prudent —to look and to listen and to do the things that will make looking and listening reasonably effective. If the vision or hearing of such a person is limited by permanent obstructions or disturbances, he should for that reason be cautious; if his vision or hearing is limited by transient obstructions or disturbances, under circumstances which oblige him to rely on the sense thus limited, he should wait until it has again become efficient to warn him of peril. One sense, if well used, may give warning enough. To go on a railroad crossing in the way of a train which can be neither seen nor heard, but which would be either visible or audible except for some temporary hindrance to sight or hearing, is to be negligent."

And in Swanson v. Central R. R., 63 N. J. Law, 605, at page 607, 44 Atl. 852:

"That it is the duty of the traveler upon a highway, before crossing a railroad, to look up and down the tracks and also listen for approaching trains, and that his failure to do so is such negligence as will prevent a recovery if he is run down at the crossing, has been declared by this court in a long line of cases. So, too, it is entirely settled that, if his ability to see or to hear an approaching train is temporarily diminished or destroyed by obstructions or disturbances which are transient in their nature, reasonable prudence requires him to wait until such obstructions or disturbances have disappeared and his senses have again become efficient to warn him of danger before attempting the crossing. Merkle v. New York, Lake Erie & Western Railroad Co., 49 N. J. Law, 473 [9 Atl. 680]; West Jersey Railroad Co. v. Ewan. 55 N. J. Law, 574 [27 Atl. 1064]; Pennsylvania Railroad Co. v. Pfuelb, 60 N. J. Law, 278 [37 Atl. 1100]; s. c. on Error, 61 N. J. Law, 287 [41 Atl. 1116]; Central Railroad Co. v. Smalley, 61 N. J. Law, 277 [39 Atl. 695]."

And in Passman v. West Jersey & Seashore R. R. Co., 68 N. J. Law, 719, at pages 721, 722, 54 Atl. 809, at page 810 (61 L. R. A. 609, 96 Am. St. Rep. 573):

"The respective rights of railroad companies and persons attempting to pass over their tracks at regular crossings are reciprocal. The company has the right of way; it must, however, give the statutory signals of the approach of its trains. A person about to cross a railroad track on a highway is presumed to know the danger, and, while he may reasonably expect to be warned by the prescribed signals of an approaching train, he cannot justify himself in risking the danger unless he has exercised the senses nature has given to protect him from harm, and he must exercise such faculties in the manner that an ordinarily prudent person would exercise them under similar circumstances. The greater the difficulty of discovering the danger as apparent from the surroundings, the greater is the care required, and, if the circumstances are such that one sense is rendered less reliable, the others must be used to a correspondingly greater extent. * * * The plaintiff's intestate in this case was riding on a bicycle, a vehicle propelled by his own power, over which he had personal control. The general rule to be applied requires a bicyclist, on approaching a railroad crossing where the view of the track is in any way ob-

scured, to dismount, or at least bring his wheel to such a stop as will enable him to look up and down the track and listen before attempting to cross, and, while his acts may vary in certain details, the law requires of him practically the same reasonable care as is required of a pedestrian. Robertson v. Pennsylvania Railroad Co., 7 Am. & Eng. R. R. Cas. (N. S.) 605 [180 Pa. 43, 36 Atl. 403, 57 Am. St. Rep. 620]."

In each of the foregoing cases the plaintiff was held not entitled to recover as matter of law.

We feel compelled to the conclusion that Mrs. Thierer did not act with ordinary prudence, was guilty of contributory negligence, and therefore cannot recover. The judgments are reversed.

COXE, Circuit Judge (dissenting). I am unable to concur with the majority of the court that the plaintiff was, as matter of law, guilty of contributory negligence.

The plaintiff is a woman of ordinary intelligence and there is nothing to show that she was reckless or that her senses were in any way impaired. She was put in a position of great peril by the defendant's action in blocking both sides of the crossing, on the first two tracks, with stationary cars and then backing an engine across without warning or precaution of any kind. Manifestly the plaintiff could not look north and south at the same moment. As she left the second track and passed beyond the overhang of the freight cars she stooped forward to look in the direction where she had reason to think danger might be apprehended and before she could turn to look in the other direction the engine backed upon her. The presumption is that she took all the necessary precautions to preserve her life and to hold, upon such evidence, that she was in fault as matter of law seems to me unwarranted. In my opinion the question of contributory negligence was clearly one for the jury and the judgment should be affirmed.

### On Motion for Rehearing.

WARD, Circuit Judge. After our decision was handed down in this case the defendant in error moved for a rehearing on the strength of chapter 278, Laws of 1910, of the state of New Jersey, which had not been called to the attention of the trial court or of this court. We permitted briefs to be submitted on each side and have given the subject careful consideration. The act provides that when any one is injured or killed at a railroad crossing where the company has not installed safety gates, bells, or other devices to give warning to the traveling public:

" * * * The plaintiff in such action shall not be nonsuited on the ground of contributory negligence on his own part or on the part of the persons for whom such suit is brought, but in all such cases it shall be left to the jury to determine whether the person injured or killed was exercising due and reasonable care under the conditions existing at said crossing at the time of such injury or death, and if the jury shall determine that the person injured or killed was not exercising due and reasonable care under the conditions existing at said crossing at the time of such injury or death, the verdict shall be against the plaintiff and in favor of the defendant."

[6] The trial judge did actually try the case in accordance with this statute, because he submitted the question of the plaintiff's contribu-

tory negligence to the jury, whereas we held he should have disposed of it as matter of law and have directed a verdict in favor of the defendant. The act does apply to the crossing in this case, and if it regulated the cause of action we should feel bound to enforce it. The majority of the court, however, are of the opinion that it does not, but is a mere regulation of procedure. It does not abolish the defense of contributory negligence, or hold that the plaintiff may recover in spite of it, nor do more than provide that the plaintiff shall not be nonsuited by the court on this ground. This, we think, affects the remedy only. The Supreme Court of New Jersey evidently so regards it, because we are furnished with its opinion in the case of Shoemaker v. Central R. R. of New Jersey, 89 Atl. 517, decided March 3, 1913, but not officially reported, setting aside a verdict in favor of the plaintiff on the sole ground that he should have been held guilty of contributory negligence. In other words, it did not feel bound by the verdict of the jury on a question which it regarded as matter of law. As we have no power to set aside verdicts or to deal with anything but errors of law raised by exceptions, the act would have more far-reaching consequences in this state than in the state of its creation. The defendant there might have a verdict against it set aside, whereas here the verdict would be unassailable.

The motion for a rehearing is denied.