MEMPHIS ST. RY. CO. v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit. May 18, 1917.)

No. 2789.

1. STREET RAILROADS ☞88—COLLISION BETWEEN CARS OR TRAINS—RAILROAD CROSSINGS.

Where, from the first operation of the trains of a steam railroad across the tracks of a street car company, such trains had the right of way, and had been accustomed to proceed without stopping or slackening their speed, while it had been the uniform custom for the street cars to come to a full stop, and for the conductor to go forward to ascertain whether a train was approaching, and then signal the motorman, and the street car company had instructed its conductors to pursue this course, it was the duty of a conductor, before signaling the motorman, to go upon the track and look for trains, and it was also his duty to see an approaching train, unless it was so obscured by smoke and dust that he could not see it, in which event it was his duty to delay signaling the motorman for a reasonable length of time to allow the smoke and dust to clear away.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 188, 189.]

2. TRIAL ☞295(7)—CONSTRUCTION OF CHARGE AS WHOLE—CONTRIBUTORY NEGLIGENCE.

In an action by a steam railroad against a street car company for damages in a collision, an instruction that, if there was no smoke or dust to obscure the street car conductor's vision, he was chargeable with seeing what was to have been seen in the exercise of reasonable care, and that if a train was approaching, and he signaled the street car to come forward, and the collision occurred, defendant was negligent, and liable to plaintiff, was not erroneous, as permitting a finding for plaintiff, without consideration of plaintiff's claimed acts of contributory negligence, where the court further charged that, even if defendant committed an act which proximately caused the collision, there could be no recovery, if plaintiff was also guilty of negligence proximately contributing thereto, that if plaintiff was guilty of negligence in the operation of its train, no matter how slight, that contributed to the accident, there could be no recovery, although defendant's employés were negligent, and that it was

plaintiff's duty in the exercise of reasonable care to ring the bell or blow the whistle, keep an outlook on the engine for obstructions on the track, and, if an obstruction appeared, to apply the brakes and do all that could be done to stop the train, and to do such other things to avoid the collision as a reasonably prudent person would have done under like conditions and circumstances, since the charge is not to be considered with reference to isolated portions, but as an entirety.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 709.]

3. STREET RAILROADS ⊙98(11)—COLLISIONS BETWEEN CARS OR TRAINS—CON-
TRIBUTORY NEGLIGENCE.
Where, from the first operation of the trains of a steam railroad across street car tracks, it had the right of way, and had been accustomed to proceed without stopping or slackening the speed of its trains, while it had been the custom for the street cars to come to a stop, and for the conductor to go forward and look for trains, the street railroad, by consenting that the railroad trains might operate over the crossings without reducing their speed, thereby impliedly agreed that such operation should be attended with no danger to itself, and, in an action by the steam railroad for damages sustained in a collision, could not rely on the rate of speed of the railway train as contributory negligence.

4. TRIAL ⊙250—INSTRUCTIONS—APPLICABILITY TO CASE.
Where instructions are inapplicable to the situation disclosed by the record, error might not be predicated on their refusal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 584–586.]

5. APPEAL AND ERROR ⊙978(3)—REVIEW—DISCRETION—DENIAL OF NEW
TRIAL.
If a plain prejudicial error is committed in the denial of a new trial on account of a juror's disqualification, such error may be considered on appeal, notwithstanding the established rule that the granting or refusal of a new trial rests in the sound discretion of the trial court and cannot be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3895.]

6. NEW TRIAL ⊙56—DISQUALIFICATION OF JURORS—PREJUDICE.
In an action by a railway company, the jurors on their examination were asked collectively whether they were directly or indirectly interested with plaintiff, or had any contracts with it that would cause them to incline favorably toward it, and all remained silent, indicating that they answered in the negative. One juror in fact owned one share of stock in the railway company, but such ownership had passed from his mind. He was the foreman of the jury and the last to vote, and made no attempt to influence his fellow jurors, and did not make his views known before voting. At the same term he had sat in several cases against the railway company, and had voted for verdicts against it. If the verdict had been apportioned among the stockholders, his share would have been slightly more than one-third of a cent. *Held*, that prejudice was not shown, and his ownership of stock was not cause for granting a new trial, especially as a juror whose examination is so conducted as to not bring his attention to a disqualifying circumstance, or cause him to refresh his memory touching it, is not required to know or surmise that something more is intended than is clearly expressed by the questions asked him.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 116–119.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by the Illinois Central Railroad Company against the Memphis Street Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Roane Waring, of Memphis, Tenn., for plaintiff in error.

Charles N. Burch, of Memphis, Tenn., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. The Illinois Central Railroad Company as plaintiff, recovered a judgment against the Memphis Street Railway Company as defendant, for damages sustained by its engine, tender, tracks, roadbed, cars, and freight contained in its cars, in a collision which occurred between its train and the defendant's car at Binghamton, Tenn., about dusk, September 17, 1914. The cases of the passengers, Bobo, Moore, and McCoy, against the defendant, decided by this court and reported in 232 Fed. 708, 146 C. C. A. 634, arose out of that mishap. The jury found that the damages of which complaint was made were caused by the defendant's sole negligence.

It is claimed by the defendant that the trial court erroneously told the jury as a matter of law (1) that it was the duty of its conductor, before signaling the motorman to cross the railroad tracks, to wait until the smoke or dust caused by the south-bound train, which had just passed, had cleared away, for the reason that his attitude toward the plaintiff is the same as if he was the injured party against whom the defense of contributory negligence was interposed on account of his conduct; and (2) that, if the conductor directed the motorman to proceed after the south-bound train had cleared the crossing, without waiting for the dust and smoke to rise, settle, or float away, he was guilty of negligence and the defendant liable, the effect of which it is alleged was to pretermit entirely the questions of contributory negligence and proximate cause. These criticisms necessitate a consideration of the state of the evidence touching the situation of the conductor, the condition of the atmosphere produced by the south-bound train, and the language employed by the court in charging the jury concerning such matters.

It is shown by the proofs, and finally by the defendant's admission of record, that from the first operation of plaintiff's trains in the spring or summer of 1908 across the defendant's tracks, the plaintiff's trains had the right of way and had been accustomed to proceed without stopping or slackening their speed, and that the uniform custom had been that the defendant's cars came to a full stop before entering upon the railroad tracks, at which time the conductor went forward upon the tracks to ascertain whether a train was approaching and then signaled the motorman forward, providing there was no oncoming train. Aside, however, from the existence of such uniform practice, the defendant's instructions to the conductor were that, when his car reached the crossing, he should pursue a course in precise accord with such custom. The conductor had been operating over the defendant's track at the point of collision, was making one of his regular trips, and was familiar with the established custom and defendant's instructions. If the jury found, notwithstanding some division in the evidence, that the south-bound train left behind a trail of smoke and dust, its conclusion was supported by a clear preponderance of the evidence upon that

subject; nor can complaint be justly made, if it further found that the smoke and dust were not so dense as seriously to obscure the view of the approaching north-bound train, for the reason that there is disinterested evidence coming from passengers on the motor car that, before the approaching locomotive cleared the south-bound train, they saw its smokestack, the smoke issuing from it, a flashing light such as occurs when a fireman is firing his engine, and a light cast forward by the headlight before the headlight itself could be seen. The headlight, consisting of an oil lamp within a reflector, was burning. The lamp either exploded or was broken in the collision, and the fire caused thereby was extinguished by the trainmen. The only difference between the parties regarding the headlight is that the defendant says it was dim and the plaintiff claims it was bright. There is evidence from the defendant's employés that the conductor, before signaling the motorman forward, looked southward along the plaintiff's tracks (which were straight), but two of the passengers on his car say he did not look in that direction at all. The vision of the engineer, who was seated on the right-hand side of his engine, was so obscured by the boiler as to prevent his seeing objects on the track unless they were distant about 300 feet or more. The fireman, who was on the lookout as well as the engineer, at some point within that distance of the crossing saw the defendant's conductor, standing on or near the north-bound track, signal to the motorman to go forward. He immediately notified the engineer, who shut off the throttle, applied the emergency brakes, and "put the straight air on the engine and opened the air side." There is no evidence that the engineer did not promptly call into action every means and appliance at his command to check the speed of and stop his train. A pronounced majority of the witnesses testified that the speed per hour of the north-bound train was from 15 to 20 miles, although one witness fixed it as high as 35 or 40 miles and another, when interrogated before the trial, fixed it as low as 8 miles. A number of witnesses stated positively that they heard the oncoming engine whistle, and the same number either say it did not whistle, or that they did not hear it do so. The evidence is conflicting as to whether the engine bell was ringing or not, the trainmen stating that it had been made to ring continuously and automatically from a crossing a mile south of the point of accident.

[1] In view of the existing established custom and the defendant's instructions to the conductor, the court very properly said to the jury that it was the conductor's duty, before he signaled the motorman to go forward across the plaintiff's tracks, to go upon them and to look southward along the north-bound track, to see whether a train was approaching. But the charge in that connection did not, however, end with that statement. The jury was further told that if there was an approaching train, it was the conductor's duty to see it, unless it was so obscured by smoke and dust produced by the south-bound train that he could not see, in which event it was his duty to delay signaling the motorman for a reasonable length of time, to allow the smoke and dust to clear away so as not to obscure his vision of the track. This instruction, which embodied the rule of ordinary care, was warranted by the state of the evidence, would have been proper had the conductor

been the injured party confronted with the charge of contributory negligence, and is in accord with reason and authority. McCrory v. Chicago, M. & St. P. Ry. Co. (C. C.) 31 Fed. 531; Memphis St. Ry. Co. v. Roe, 118 Tenn. 601, 102 S. W. 343; Memphis St. Ry. Co. v. Cavell, 135 Tenn. 462, 474, 475, 187 S. W. 179; Memphis St. Ry. Co. v. Bobo, 232 Fed. 708, 146 C. C. A. 634 (C. C. A. 6); New York S. & W. R. Co. v. Thierer, 209 Fed. 316, 318, 319, 126 C. C. A. 242 (C. C. A. 2); Chicago & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 73, 64 C. C. A. 399 (C. C. A. 8); Chicago, R. I. & P. Ry. Co. v. Pounds, 82 Fed. 217, 219, 27 C. C. A. 112 (C. C. A. 8); Elliott on Railroads, § 1170.

[2, 3] The court further told the jury that if there was no smoke or dust to obscure the conductor's vision, and if he looked southward along the north-bound track, he was chargeable with seeing what was to have been seen in the exercise of a reasonable degree of care and caution under such circumstances, and then added that if the plaintiff's train was approaching and the conductor signaled the street car forward and the collision occurred, the defendant was in that event guilty of negligence and liable to the plaintiff. The statement in effect that even if the conductor could see and ought to have seen the approaching train and nevertheless ordered the motorman to proceed, the defendant was negligent and liable for damages, is alleged to be erroneous on the ground that it left the jury free to reach a conclusion without considering the claimed acts of contributory negligence on plaintiff's part urged by the defendant. But the statement made by the court was not absolute. It was qualified not only by the immediately preceding statement, but by the next following independent sentence, in which the jury was instructed that, even if the defendant committed an act which proximately caused the collision, there could be no recovery against it, if the plaintiff was also guilty of negligence which proximately contributed thereto and the damages resulting therefrom. A further broad instruction was given at the defendant's instance that if, from the whole of the evidence, the jury found that the plaintiff in the operation of its train was guilty of negligence, "no matter how slight," that contributed to bring about the accident, there could be no recovery, although it further found the defendant's employés likewise guilty of negligence; nor did the court fail to allude to the specific acts on which the defendant might rightfully rest its charge of exculpating contributory negligence. It directed that it was plaintiff's duty in approaching the crossing, in the exercise of reasonable caution and care, to ring the bell or blow the whistle, to keep a lookout on the engine for obstructions on the track, and, if an obstruction appeared, to apply the brakes and do all that could be done to stop the train and to do "such other things to avoid the collision which a reasonably prudent person would have done under like conditions and circumstances," and that if the defendant gave the hereinbefore mentioned instructions to its employés, and if the practice of its employés was to observe them, and if such practice was known to and relied on by the plaintiff, and if it was the custom of the plaintiff, to the knowledge of defendant, to operate its trains at the crossing without checking their speed, it then was not negligence in the plaintiff to run its train over the crossing without stopping or slackening its speed.

There was a still further instruction that it was the duty of the plaintiff's trainmen, when about to reach an obstructed crossing, to use under the circumstances reasonable and ordinary care in operating their train to prevent injury to persons seeking to cross the track. The question of ordinary care in the operation of the train necessarily involved the rate of speed, if reliance could be had on it as a defense. The thought is present in the charge that the jury, having regard to all of the evidence, should determine all the issues. The defendant, by consenting that the railroad trains might operate over the crossing without reducing their speed, thereby impliedly agreed that such operation should be attended with no danger to itself, and was not therefore in position to rely on the charge of contributory negligence on plaintiff's part due to the rate of speed. Louisville & N. R. Co. v. East Tennessee, V. & G. Ry. Co., 60 Fed. 993, 996, 9 C. C. A. 314 (C. C. A. 6). The charge is not to be considered with reference to isolated portions, but as an entirety, and when so considered it did not fail fully to cover every phase of the case made by the evidence.

That portion of the charge is assailed in which the court told the jury that contributory negligence on the part of the plaintiff was not made out, if, in the exercise of reasonable care and caution, it did certain things, such as ringing the bell or blowing the whistle, keeping a lookout on the engine, attempting to check the train by the use of all available means as soon as the obstruction on the track was seen, and the like. It is alleged that the speed of the train and its manner of operation, in view of the presence of smoke and dust, which the defendant contends existed, were negligence, and that the jury should have been left to say what the plaintiff should have done and whether its acts were negligent or not. In view of what has already been said, it is clear, we think, that the court did not err as alleged.

[4] There are several assignments of error based on the court's refusal to instruct as requested by the defendant. There was no exception taken to any of the refusals, but waiving that omission and considering the inclusion, in some instances, of impertinent and the exclusion, in other instances, of pertinent matter, and their inapplicability to the situation disclosed by the record, error may not be predicated on their rejection. A discussion of them would not be profitable.

In support of the motion for a new trial the defendant filed the affidavit of a juror, a leading merchant of the city of Memphis, from which it appears that as the result of a direct inquiry made of him several days after the verdict had been rendered, he discovered that he owned one share of the plaintiff company's stock. Having had no occasion to refer to it for many years, his ownership of it had passed from his mind until the above-mentioned inquiry was made. As the chosen foreman of the jury, he was the last to vote on the verdict to be returned. He did not attempt to influence any of his fellow jurors, did not know how any of them would vote, nor did any of them know his views of the case. He had at the same term sat in several cases brought against the plaintiff and had voted for verdicts against it. On examination of the jurors before they were sworn, they were asked collectively whether any of them were directly or indirectly interested with the plaintiff or had any contracts with it that would cause them

to incline favorably toward it. The plaintiff remained silent, as did all the other jurors, which silence was understood as and intended to be an answer in the negative to the queries propounded. The juror believed the purpose of such queries to be to ascertain whether he sustained any contractual relations with the plaintiff. He was not asked whether he was one of its stockholders. If the amount of the verdict ($4,000) were apportioned among the stockholders, his share would be a fraction more than one-third of a cent. Error is predicated on the court's rejection of the claim that the verdict should be set aside on account of the juror's stock ownership.

[5, 6] Notwithstanding the established rule that the granting or refusal of a new trial rests in the sound discretion of the trial court and cannot be made the subject of review upon a writ of error, if, as the defendant claims, a plain prejudicial error was committed in the denial of a new trial on account of the juror's disqualification, justice requires that such error be considered. United States v. Tennessee & Coosa R. R. Co., 176 U. S. 242, 256, 20 Sup. Ct. 370, 44 L. Ed. 452; United States v. Bernays, 158 Fed. 792, 794, 86 C. C. A. 52 (C. C. A. 8); New York Life Ins. Co. v. Rankin, 162 Fed. 103, 108, 89 C. C. A. 103 (C. C. A. 8.). Authority for considering a kindred motion is found in Spreckels v. Brown, 212 U. S. 208, 213–215, 29 Sup. Ct. 256, 53 L. Ed. 476. When an examination of a juror is so conducted as not to bring his attention to a disqualifying circumstance or cause him to refresh his memory touching the same, he is not required to know or surmise that something more is intended than is fairly expressed by the terms of the questions addressed to him. Swarnes v. Sitton, 58 Ill. 155; Thompson & Merriam on Juries, p. 343, note; Kenrick v. Reppard, 23 Ohio St. 333; Watts v. Ruth, 30 Ohio St. 32. In Missouri, K. & T. Ry. v. Munkers, 11 Kan. 223, 232, Judge Brewer held that when a trial is complete and the verdict returned, the verdict ought not to be disturbed by reason of the possibility of prejudice in the mind of a juror towards the losing party, and that the proof of prejudice should be clear, otherwise great injustice might be done to the successful party as well as the juror. See, also, Baylies, New Trials (2d Ed.) 586, and authorities cited, and 29 Cyc. 765. The law governing such situations as the one now under consideration is comprehensively stated adversely to the plaintiff in Kohl v. Lehlback, 160 U. S. 293, 300, 301, 16 Sup. Ct. 304, 40 L. Ed. 432, and Thompson & Merriam's above-mentioned work, at pp. 338–340. See, also, Hollingsworth v. Duane, 4 Dall. 353, Fed. Cas. No. 6,619, and Morse v. Montana Ore-Purchasing Co. (C. C.) 105 Fed. 337. The Tennessee rule also coincides with the above-mentioned authorities, as appears from Judge Hammond's exhaustive opinion in Brewer v. Jacobs (C. C.) 22 Fed. 227, 234–236, and Judge Brewer's opinion in the Munkers Case, which touches on the decisions of that state. Prejudice on the part of the juror is not shown and under the circumstances presented his stock ownership did not constitute cause for granting a new trial.

We find no error in the record, and the judgment is therefore affirmed.